# CHARLESTON.

### BRIDGE CO. *v.* PT. PLEASANT.

#### *(GREEN, JUDGE, absent.)

Submitted January 25, 1889.—Decided March 4, 1889.

1. TOWNS—CORPORATE LIMITS.
   It is not necessary to the validity of an order of the Circuit Court under Code 1887, c. 47, s. 49, approving a change of the limits of a town, that the order show on its face, that the town contains less than 2,000 inhabitants.

*On account of illness.

2 TOWNS—CORPORATE LIMITS—TAXATION.

A town may under said chapter of the Code, extend its corporate limits so as to include a railroad bridge across the Ohio river and impose municipal taxes on such bridge. Such taxation is not *ultra vires.*

*Gunn & Gibbons* and *Tomlinson & Wiley* for appellant.

*Knight & Couch* and *W. A. Quarrier* for appellee.

BRANNON, JUDGE:

The Point Pleasant Bridge Company exhibited its bill in the Circuit Court of Mason county against the town of Point Pleasant complaining and stating, that the original corporation of said town in 1794 did not include the Ohio river; that the plaintiff as a corporation was owner of a railroad bridge across the Ohio situate entirely without the bounds of said town at the time of its construction except some of its approach; that immediately after its construction the town enlarged its limits so as to embrace therein all the river opposite the town to low-water mark on the Ohio shore and include all of the bridge, which was in West Virginia, as would appear from a copy of an order of the Circuit Court enlarging such limits, (*Davis.*v. *Pt. Pleasant, ante* p. 289); and that the change in boundary so as to embrace the river was not made in good faith nor for improving the new territory in front of the town nor for legitimately benefiting the territory in the old charter but falsely and fraudulently for the transparent purpose of raising revenue on property out of the corporation, not in any way benefited or capable of receiving benefit from the change, so that the revenue might be used to improve property within the old charter; that the town had imposed and placed in the officer's hands for collection $——— taxes for 1886, and $253.63 for 1887.

Plaintiff averred: (1) The power to levy taxes by a town must be based on "benefits both actual and prospective conferred upon the taxed property rendering it not unreasonable, that the municipal government should be extended over it." (2) The bed of the Ohio river could not possibly be laid off into lots or streets, and the town had not the right, if it were possible to do so, to lay out the bed of the river into lots or to extend its streets into it, because it would ob-

struct navigation and appropriate the river to purposes, which were never intended; that the state of Virginia never parted to any one with title to the soil under the Ohio; plaintiff had acquired from West Virginia and the United States authority to build its bridge; defendant could not without the consent of the state extend its limits over land belonging to the state, nor tax a bridge on land belonging to the state. (3) The plaintiff could never use its right of way across the river as city-property, and could not receive any profit from it as such. (4) The town does not light the bridge and furnishes no police for its protection. (5) The taxation of the bridge was *ultra vires* not as required by law. (6) The extension was fraudulent and void. (7) In making the extension the town did not comply with the law, and the extension was void. (8) The order of court extending the town was not made till September 6, 1886, yet the town was collecting taxes for 1886.

The bill asked an injunction to restrain collection of the taxes and the vacation of the order of the 6th of September, 1886, extending the town. An injunction was granted. An amended bill charged, that the power to create, alter or amend a municipal charter was a high prerogative act of sovereignty; that the power to do so is vested in the Legislature except in the case of towns of less than 2,000 population, in which case the power is in the Circuit Court; and that, to render the order of the Circuit Court enlarging a town valid, there must be a judicial finding on the face of the order, that the town has less than 2,000 inhabitants, otherwise the order is void. It charged, that, as the order in this case had no such finding, it was void. A motion to dissolve the injunction was overruled.

The answer of the town alleged, that the Ohio river was within the bounds of the old charter. It denied, that the extension was made in bad faith for fraudulent purpose, as alleged in the bill. It denied all allegations of the bill, that the change was made only to collect taxes, and alleged, that the town had spent $2,500.00 in improving streets beyond the limits of the old town leading to the depot, where passengers and freight are received to be carried over the bridge, and that other improvements had been made beyond the ex-

tension. It denied the legal proposition of the bill and the statement, that it furnished no police to protect the bridge. It asserted its right to tax and contended, that the order of the Circuit Court was valid. It alleged, that the bridge was completed in 1885, and the plaintiff refused to give it in for taxation, knowing that it extended from the old corporation to the middle of the Ohio, making at least half of the bridge liable. It asserted, that the old town had but six vacant lots, and extension was necessary, and many lots had been laid out and improvements made beyond the old limits within the extension.

The cause was heard on the bill, amended bill, exhibits, answer and replication; and the injunction was by decree perpetuated enjoining the town from hereafter assessing taxes on the bridge and vacating the order of the Circuit Court approving the extension of the corporate limits; and the town appealed.

This Court holds in this case, as in the case of *Davis* v. *Point Pleasant*, that the order of the Circuit Court is valid. As to this point reference is made to the opinion in that case *supra* p. Can the town of Point Pleasant extend its limits over the Ohio? We think it can. The territorial jurisdiction of the State extends to low-water mark on the northwestern side of the Ohio, under the act of cession by Virginia to the United States of the north-west territory. *Handly's Lessee* v. *Anthony*, 5 Wheat. 374; *Garner's Case*, 3 Gratt. 655; *State* v. *Plants*, 25 W. Va. 119; *Ravenswood* v. *Flemings*, 22 W. Va. 52. The Legislature representing the sovereignty of the State over its territory, has by the statute Code, c. 47, s. 48, delegated to municipal corporations the power of extending their limits without any restriction as to the location or character of the territory, over which the extension may run, and inferentially and logically they may extend such limits over any territory of the State, so that it go no further, whether such territory be land not covered with water, or rivers navigable or innavigable. Of course as to navigable rivers the powers of the town must be subject to the *jus publicum* of navigation. There is great reason, why such extension should cover such a river as the Ohio. The exertion of ordinary police functions to sup-

press disorder, places of dissipation and bad repute, and illicit selling of liquors, and for many other purposes, render corporate powers there as necessary as on the land.

The old charter of Point Pleasant could not, as contended by the town, have extended over the Ohio, as the act of 1794 organizing it enacted, that the 200 acres owned by Thomas Lewis at the mouth of Kanawha river, as laid off into lots and streets, should be established as a town. This tract did not cross the river, as the boundaries of riparian owners on the Ohio are limited to ordinary low-water mark. *Barre* v. *Fleming*, 29 W. Va. 314 (1 S. E. Rep. 731). The state owns the bed of the river from ordinary high-water mark.

Can the town tax this bridge crossing the river Ohio? We think it can,—so much of it as is within this State. It is property within the corporate limits of the town and the jurisdiction of the State. The State constitution as to state taxation declares that "all property, both real and personal, shall be taxed in proportion to its value." This means, that all property must be taxed. *Railroad Co.* v. *Miller*, 19 W. Va. 408. Section 9, art. X. of the constitution provides, that "the Legislature may by law authorize the corporate authorities of cities, towns and villages for corporate purposes to assess and collect taxes." Under this section the Legislature has by the Code c. 47, s. 31 directed, that the tax-levy "shall be upon all dogs in the said city, town or village and upon all the real and personal estate therein subject to state and county taxes." Property subject to state taxation being thus made expressly subject to town taxation, it follows, that this bridge is not only liable to taxation for town purposes, but that it must be taxed, the council having no discretion to exempt it, every tax-paying owner of other property having the right to demand its taxation. That a bridge, though it be across the Ohio, is liable to state taxation, cannot be doubted. *Thomson* v. *Railroad Co.*, 9 Wall. 590; *Railroad Co.* v. *Peniston*, 18 Wall. 29; *Lane Co.* v. *Oregon*, 7 Wall. 77. It is conceded even in *Bridge Co.* v. *Louisville,* 81 Ky. 189, which denies the right to a city to tax such a bridge.

The United States supreme court, in opinion in *Lane Co.* v. *Oregon*, says of this power: "The extent, to which it

shall be exercised, and the subjects, upon which it shall be exercised, are equally within the discretion of the legislatures, to which the states commit the exercise of the power." Towns are in a material sense a part of the general machinery of the state government, auxiliaries of that government performing within limited districts various important functions helpful to the general order and welfare of the state; and the power of taxation is essential to their existence and efficiency. This taxing power vested in them, so far as the state has delegated it to them, is but a part of the state's taxing power, partakes of the nature of the source, from which it emanates, springs from its sovereignty as to taxation, and is justified by the same necessity in legal contemplation. The State having unlimited power to tax, it can retain a part and delegate to a municipality a part of its power; and it has done so.

The appellee cites with confidence the case of *Bridge Co.* v. *Louisville, supra.* One of the points of the syllabus in that case as to a bridge over the Ohio is: "Appellant's bridge is not subject to taxation by the city of Louisville. A city has no power to tax property, which derives no benefit from its government." This holding is based on several decisions in Kentucky, holding that farming lands within towns, but not laid off into lots, and through which there were no streets, and not near enough to the occupied parts of the town and streets to be benefitted by municipal government, can not be taxed by the town, and that as no streets or lots can be laid out in the river, and the company can not use its bridge save as its own property, it does not derive benefit from its use as city property. These cases are based on the idea, that the property derives no benefit from the town. This idea is fallacious. The bridge is or may be in many ways benefitted by town-authority. Its police protects the bridge from wanton injury; it improves streets leading to stations, where passengers and freight are received to pass, or which have passed over it, and in other ways that may be not always apparent. Some benefit it does and may at any time receive. It may not be benefitted as much as some others, but it is impossible to adjust benefits of municipal or any other government equally among all. But, be this as it may, the right to tax

does not depend on the presence or absence of benefit to the property taxed from the town-government. It arises from the fact, that the bridge is property owned by a private corporation, situate within the town and for that reason liable like a natural person's property to taxation. This Court in *Powell* v. *Parkersburg*, 28 W. Va. 698, and *Davis* v. *Point Pleasant, ante,* disregarding the question of benefits, that may or may not flow to the property from inclusion within the town, holds that all property real and personal within a town is liable to town-taxation. The able and lamented counsel for the appellee was able to cite us no other case than the Kentucky case to support him on this point, and I have not myself met with any other. It may be added that the statute regulating assessment of taxes, in Code c. 29, s. 63, requires railroad bridges to be assessed. The fact that the State owns the bed of the river on which the bridge rests, and the other fact that there exists a public right of navigation, can not exempt the bridge. The company obtained from the State and the United States license to build, own and operate the bridge,—obtained the right of way,—but the bridge is not a part of the State's property, but is the property of the company separate from the soil for taxation purposes and not exempt, because the bed of the river is exempt. It is the company's property, in its use and occupation, under a mere right of way granted by the State.

As to the charge of fraudulent intent in the extension of the town-limits, it is denied in the answer, and there is no proof of it. But we cannot as a court impute fraudulent motive to the action of a town-council and the people in performing functions authorized by law. 1 Dill. Mun. Corp. § 311; Cooley, Const. Lim. 187, and note 1. The bill alleges, that taxes for 1886 were assessed, whereas the order extending did not take effect until September, 1886; but the bill is blank as to the amount of taxes for 1886,—in effect, no allegation as to that matter.

The decree of the Circuit Court must be reversed, the injunction dissolved and the bill dismissed with costs to defendant in both courts.

REVERSED.