Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## CITY COUNCIL OF ALEXANDRIA V. ALEXANDRIA COUNTY AND OTHERS.

March 11, 1915.

Absent, Keith, P. and Kelly, J.*

1. MUNICIPAL CORPORATIONS—*Annexation of Territory—Validity of Statute.*—The statutes of this State for the annexation of additional territory to cities and towns of the State are constitutional and valid enactments.

2. MUNICIPAL CORPORATIONS—*Annexation of Territory—Necessity or Expediency—How Determined—Opposition to Annexation.* The necessity for and the expediency of enlarging the territorial limits of cities and towns is determined by the health of the community, its size, its crowded condition, its past growth, and the need in the reasonably near future for development and expansion. These are matters of fact, and when they so exist as to satisfy the judicial mind of the necessity for or the expediency of annexation, it should be ordered, on the proper application of the city or town, although opposed by the county authorities, the citizens of the territory proposed to be annexed, and a considerable number of the citizens of the city or town asking the annexation.

3. MUNICIPAL CORPORATIONS — *Annexation of Territory — Public Health—Case at Bar.*—It is not a sufficient defense to the demands of a city that its corporate limits be extended for sanitary reasons to point to the fact that the health of its citizens is and has been good for some years. A municipality has the right, and it is its duty, to take such precautionary measures as may be reasonably deemed necessary to secure to its population continued good health. In the case at bar, the density of the population, the crowded and congested condition existing therein, as well as the conditions existing in the territory adjacent to the city and proposed to be annexed, imperil the health not only of the city, but of the citizens residing and conducting business adjacent thereto.

* Argued before Judge Kelly's term began.

4. MUNICIPAL CORPORATIONS—*Annexation of Territory—Public Necessity—Public Policy—Function of Courts.*—The policy of annexation of territory to a city, as a public necessity, was determined by the legislature when it enacted the statute providing for its accomplishment under the conditions specified in the act. The courts are not called upon to express any opinion as to its wisdom as a matter of public policy. They have only to determine whether, upon the facts and circumstances established by the evidence, the city is entitled to any extension at all, and if any, how much, and the terms and conditions upon which such extension shall be granted.

5. MUNICIPAL CORPORATIONS—*Annexation of Territory—Annexation of Part—Case at Bar.*—Under the statute of this State, the court is not obliged to annex all the territory sought to be annexed to a city, but may annex such part only as to it seems to be necessary or expedient. In the case at bar, the annexation of that part of the territory sought to be annexed designated in the opinion of the court is both necessary and convenient, and violates none of the established rules of law applicable in such cases, and is entirely within the letter and spirit of said rules.

6. MUNICIPAL CORPORATIONS—*Annexation of Territory—Increased Taxation—Swamps.*—The fact that lands proposed to be annexed to a municipality will be subject to an additional or municipal tax, or a tax to pay a pre-existing debt of the municipality, or that parts of the territory proposed to be annexed are low and marshy, are not of themselves valid objections to annexation.

7. MUNICIPAL CORPORATIONS—*Annexation of Territory—Sufficiency of City Ordinance.*—A city ordinance for the annexation of adjacent territory which substantially complies with the statute regulating such annexation, and sets forth the case of the city with as much fullness and detail as is practical under the circumstances, is all that is necessary.

8. MUNICIPAL CORPORATIONS—*Annexation of Territory—Change of Voting Districts—Constitutional Law.*—The statute regulating the annexation of territory to a city or town was passed in pursuance of section 126 of the Constitution regulating the apportionment of the State into senatorial and house districts, although it changes the voting district of persons residing in the annexed territory. Such changes must have been within the contemplation and intent of the enactors of the Constitution.

Error to a judgment of the Circuit Court of Alexandria county, on an application to annex certain additional territory to the city of Alexandria. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*John M. Johnson, S. G. Brent* and *S. P. Fisher,* for the plaintiff in error.

*Crandall Mackey, Montague & Montague, C. V. Ford,* and *Moore, Barbour, Keith & McCandlish,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

The city council of Alexandria having, as it was advised, complied with all the requirements of clauses one and two of section 1014-a of the Code of 1904, on the 27th day of June, 1912, moved the Circuit Court of Alexandria county to make an order authorizing and declaring the annexation to the city of certain territory, belonging partly to the county of Alexandria and partly to the county of Fairfax, described in an ordinance of the council of the city, approved December 29, 1911; and pursuant to the provisions of the statute in such cases made and provided the Governor of the State duly designated the Honorable Bennett T. Gordon, judge of the twenty-ninth judicial circuit, to hear the case and to determine the issues therein.

At the final hearing the issues in the case were all determined in favor of the defendant counties at the cost of the city, to which judgment the city excepted and duly filed its bill of exceptions, which embodies all the evidence introduced in the case.

In the petition for this writ of error, awarded the city of Alexandria, the action of the presiding judge dismissing its motion is alone assigned as error.

Clause 3 of the statute—sec. 1014-a, *supra*—provides: "The court presided over by some judge designated by the Governor, is to hear the case without a jury, upon the evidence introduced in the manner in which evidence is introduced in common law cases. The court shall ascertain and determine the necessity for or expediency of annexation; whether the terms and conditions are reasonable and fair; and whether fair and just provisions are made for the future management and improvement of the territory annexed. And if the court is satisfied of the necessity for or expediency of such annexation, and that the conditions and provisions are reasonable and fair, it shall enter an order annexing said territory to the city; but if the court is of opinion that no annexation is necessary or expedient, the motion shall be dismissed. The lines shall be drawn so as to have a reasonably compact body of land, and no land shall be taken which is not adapted to city improvements, unless it is necessarily embraced in said compact body of land or shall be needed in the reasonably near future for development. The court shall take into consideration the development of the city and the loss of revenue to the county."

Clause 1 of the statute provides, that "whenever any city or town shall deem it desirable to annex any territory to such city or town, its council shall declare by ordinance that it desires to annex certain territory, and shall describe therein the metes and bounds of the territory proposed to be acquired, and set forth the necessity for or expediency of annexation, and the terms and conditions upon which it desires to annex such territory, as well as the provisions which are made for its future management and improvement."

30

The ordinance adopted by the council of the city of Alexandria, upon which this proceeding was instituted, is, *mutatis mutandis,* the same as that adopted by the council of the city of Richmond and proceeded upon in the case of *Henrico County* v. *Richmond City,* which came under review in this court—*Henrico Co.* v. *City of Richmond,* 106 Va. 282, 55 S. E. 683, 117 Am. St. Rep. 1001—where the annexation statutes then and now in force in this State were construed and held to be constitutional and valid.

In the case just cited, the opinion of the court by Harrison, J., says: "Nearly if not all of the questions to be determined under the provisions of this act are questions of fact. The power so much inveighed against in the court to determine the necessity for, or expediency of, annexation, is controlled by the existence of facts and circumstances justifying action. The necessity for or expediency of enlargement is determined by the health of the community, its size, its crowded condition, its past growth, and the need in the reasonably near future for development and expansion. These are matters of fact, and when they so exist as to satisfy the judicial mind of the necessity for or expediency of annexation, then in accordance with the provisions of the act the same must be declared. It is manifest that the legislature, carrying out the provisions of the Constitution, intended, as doubtless did the enactors of the organic law, to require that every annexation should depend upon evidence showing the necessity for or expediency of annexation, that the terms proposed are reasonable and fair, and the provisions for the future management of the territory just."

We have been cited to a number of cases decided in other jurisdictions dealing with the rules to govern where a municipal corporation is seeking to annex outlying territory, but these cases, as far as we have been able to examine them, had under review and construction local

statutes wholly dissimilar to our statute. So that, as said in this case by the learned judge presiding below, in his written opinion which is a part of the record: "The present proceeding for annexing territory to a city or town being purely statutory, we must look to our statute, as interpreted by the Supreme Court of Appeals, for guidance in this important matter. (*Henrico* v. *Richmond, etc.,* 106 Va., p. 282, 55 S. E. 683, 117 Am. St. Rep. 1001.)"

The learned judge, after a view of the territory proposed by the city of Alexandria to be annexed, and also a view of the physical conditions of the city, its streets, sewers and surface drainage, reasonably made no effort to analyze the evidence introduced, witness by witness, but did in his written opinion set forth what he conceived to be a fair deduction from the evidence as a whole, concluding, in effect, that no annexation to the city of additional territory was necessary or expedient, the sufficiency of the ordinance of the city pursuant to which this proceeding was instituted as to the terms and conditions or provisions made for the future management and improvement of the territory proposed to be annexed not being discussed; so that the dismissal of the proceeding was rested solely upon the ground that the proof did not show that it was necessary or expedient to annex the territory described in the ordinance, or any part thereof.

The statute, clause 3, *supra,* provides that if the court or judge shall be of opinion that no annexation is necessary or expedient, the motion to annex shall be dismissed; but it also provides: "If, however, the court or judge shall be of opinion that the annexation of only a part of such territory is necessary or expedient, or if it shall be of opinion that said ordinance does not contain fair and reasonable terms, or if it shall be of opinion that more territory should be annexed than was described in the metes and bounds originally set forth, it shall enter a proper or-

der, embodying what it deems reasonable and fair terms upon which the annexation is to be had, and how much of said territory shall be annexed, and shall direct the annexation of such territory in conformity with the terms and conditions so prescribed. The court shall so draw the lines of annexation as to have a reasonably compact body of land, and shall also see that no land shall be taken into said city which is not adapted to city improvements unless necessarily embraced in said compact body of land, or which the city shall not need in the reasonably near future for development * * * " In other words, when the evidence, considered with respect to the health of the community, the city's size, its crowded condition, its past growth, and its present needs, as well as its needs in the reasonably near future, for development and extension, does show that some portion of the land proposed to be annexed to the city should be annexed, it is made the duty of the court to enter a proper order, embodying what it deems reasonable and fair terms upon which the annexation is to be had, and how much of the territory sought to be annexed shall be annexed, and to direct the annexation of such territory in conformity with the terms and conditions prescribed in the order. *Henrico Co.* v. *City of Richmond, supra.*

In the case at bar we cannot say that the evidence introduced should have been deemed sufficient by the trial judge to have required him to order and direct the annexation of all the territory described in the motion of the city of Alexandria, but are of opinion that the proof in the case clearly shows that it is both necessary and expedient to annex some part of this territory to meet the city's needs now as well as its needs in the reasonably near future. We could not in an opinion of reasonable length analyze the evidence introduced, consisting of a mass of documents and the testimony given by more than one hundred witnesses, but will only undertake to state, as far as is deemed

necessary, the facts not controverted and what is conceived to be a fair deduction from the evidence as a whole, to which the provisions of our statute, as interpreted by this court in *Henrico Co.* v. *City of Richmond, supra,* are to be applied.

The city of Alexandria was founded in 1748, and its limits, by amended charters, have been several times enlarged, and once (in 1871), for political reasons, diminished to those now existing; so that the land area within the present corporate boundaries is 713 acres—a little more than one square mile. It is bounded on the east by the Potomac river, on the south by Fairfax county, on the west by Fairfax and Alexandria counties, and on the north by the last named county; so that the city can be extended on but two sides, the north and west, for the reason that the land between the corporation line and Hunting creek, south of, the city, is not suitable or desirable for city purposes, and is only included in the territory proposed to be annexed in order that the city might go to the middle of Hunting creek for the purpose of draining the city properly.

The land area desired to be annexed from both counties is, approximately, 1,316 acres, or about two square miles— that is, 866 acres from Alexandria county, and 450 acres from Fairfax county, which includes 180 acres covered by the water of Hunting creek. It is true that the authorities of both the defendant counties, as well as the citizens of the territory proposed to be annexed, and also a considerable number of the citizens of the city, probably twenty *per cent.,* oppose annexation. On the other hand, the ordinance initiating this proceeding is evidence as expressing the opinion of the corporate body upon the necessity for or expediency of annexing the territory, and a large number of the citizens of the city have testified that the proposed annexation is necessary and expedient to meet the needs of the city.

It appears that the land south or southwest and the land north of the city limits has been sub-divided, and more than two-thirds of the land west and northwest of the city limits has been sub-divided, which sub-divisions, viz: Braddock Heights, Cottage Park, Park Addition, City's Poor House, Harlow's Park, Wheat and Suter's Subdivision, Rosemont, George Washington Park, and West End, lying on both sides of the Little River turnpike, are all included in the territory proposed to be annexed to the city, as well as Hooff's run which parallels almost the entire western boundary of the city, and enters the city at the intersection of Duke street and the corporation line. From its mouth to its source, about Lloyd's lane, which is the proposed northern boundary line for the city, Hooff's run drains about two-thirds of the land proposed to be annexed, and also that portion of the city west of South Fayette street and west of North Columbus street to the corporation line on the south. It is claimed, and there is evidence to support the claim, that the condition of this run is now a menace to the health, not only of the people in the city, but to the people coming into the city from the roads leading into it and the railroads; that its present condition is bad and will certainly become worse and worse as the sewerage from Rosemont, Union Station, West End, Braddock Heights, Park Addition and George Washington Park empty into it; and that it should be taken in hand and controlled from its source to its mouth at Hunting creek by the city, for the protection, not only of the people of the city, but also the people residing within the territory it drains, and because it is necessary as a part of the drainage system of the city.

It appears from the maps and the evidence before the court that the only roads leading from the city are, Patrick street extended south across Hunting creek; Duke street extended, known as Little River turnpike west of Hooff's

run; King street extended, known as the Alexandria and Leesburg turnpike from the west line of the corporation; the road leading from West street northwesterly, known as the old Braddock road, or Mushpot road; and Washington street extended in a northerly direction from the corporation limits and through to St. Asaph Junction. The main lines of railway from the north to the south pass almost parallel with the west corporation line and across the land proposed to be annexed, having their union station and freight depot adjacent to but outside of the city's western boundary line. The trolley line between Alexandria and Washington city extends up King street and across Hooff's run, and then turning north passes through the sub-divisions of Rosemont and Braddock Heights, and is used by the people of Cottage Park and Harlow's Park as well. Travel to and from the city is principally over the Leesburg turnpike, Little River turnpike, the Hunting creek road and the Washington road.

It is urged by the city as absolutely necessary that more roads should be opened leading into and connecting with the streets of the city, and that Cameron, Queen, Pendleton, Madison and Montgomery streets can and should be extended to pass under the railroad into the territory sought to be annexed, and that Princess and Oronoco streets can and should be extended into this territory, crossing the railroad at grade; while Princess street should be extended to the diagonal road, for the convenience of reaching the passenger and freight depots located just across the diagonal road.

So much as to the location and conditions of the territory proposed to be annexed to the city. Now as to the conditions in the city and its needs now and in the reasonably near future.

As observed, the land area within the present corporate boundaries is 713 acres, a little more than one square mile.

Five trunk lines of railway converge at the city and two or more of them occupy streets of the city for a considerable distance and unite just north of the city limits. There are about thirty miles of streets in the city, equal in area to 37 *per cent.* of the whole area in the city, leaving 63 *per cent.* for building purposes, of which a considerable percentage, considering the dimensions of the entire area, is unsuited and practically worthless as sites for either residences or business plants. The blocks or squares of the city contain from the center lines of the streets three acres, leaving for building purposes two acres in each block. The streets are 66 feet wide from building line to building line, except two of the principal ones, and these two are one hundred feet, the length of a square from the center of streets running north and south being about 415 feet, and the length thereof from the center of the streets running east and west is about 310 feet. Steam railroads, with their depots and yards, occupying more than five miles of the streets of the city, render useless for residential purposes about fifty blocks in the city, and but three of the streets occupied by railroad tracks are built up on both sides, the buildings consisting of small dwellings. Considering its present, as well as past, environments, it appears from the evidence that the city has a fairly good sewerage system, but which greatly needs to be improved and extended beyond the present corporate limits. More than one-half of the area of the city is now drained by sewers, and when other sewers under construction are completed, about three-fourths of the city will be sewered. It appears that practically the only outlet that the city now has for its sewerage is to the east and into the Potomac river, which is by no means sufficient for the needs of the western half of the city and that of the territory lying adjacent thereto, upon which there are quite a number of dwellings and business establishments, which should have

sewerage outlet for the protection of the health of the people of that locality as well as those residing or doing business in the city. The sewerage from the western portion of the city and the outlying adjacent sections, including the union station and freight depot must necessarily be emptied into Hunting creek, and in order to reach that destination it is absolutely necessary that the city have control of certain intervening territory which is within the boundaries of the land sought to be annexed in this proceeding from the county of Fairfax. The people in Rosemont, Braddock Heights, Cottage Park, Park Addition, in Alexandria county, and West End in Fairfax county, market, shop and transact their business in the city of Alexandria and many of them are employed in the city. They attend the churches, places of amusement, participate in the social life of the city, and are, practically, as closely connected with the city life as are the people residing within the city's boundaries. They use its streets, electricity, gas, water and telephones furnished from the city; being without police or fire protection, the police department and the fire department of the city have always responded to calls for assistance from these outlying sections. In other words, the people in these outside localities enjoy in a large degree many of the benefits of the city without having to bear any of its burdens, a large portion, if not a majority of them, having moved from the city of Alexandria within the past twenty years.

The contention that Alexandria is the most compactly built up city in the State is clearly sustained by the evidence in the record. Many of the principal streets, a mile or more long, are practically built up. King street, one of its principal streets, if not the principal street, is built up for its whole length from the river to the corporation line, on both sides, with the exception of two or three vacant lots, between West street and the western boundary, without even

31

an alley leading into it; and the former dwelling houses thereon, from Washington street westwardly, are gradually being changed into shops. This statement as to the condition of King street indicates very clearly, we think, the unusually compact way in which the available grounds in the city have been built up. There are comparatively few vacant lots in the city suitable even for modest or cheap dwellings, and but little land available for manufacturing or other business enterprises; there is no available ground within the city limits for a park for the people of the city or a play-ground for the children; there was no ground upon which to erect the union station and the freight depot of the two railroads paralleling the western boundary line of the city, and hence both are located beyond the city limits, in the territory of Fairfax county proposed to be annexed; and there was no available ground within the city for its high school building with necessary grounds attached, and the school board had to purchase for that purpose a lot of land, most of which is in Alexandria county and within the territory proposed to be annexed from that county. It further appears that the trustees of the Alexandria Hospital Association, in which the citizens of Alexandria city are greatly interested, have not been able to secure a suitable site within the city on which to erect a hospital building. There are few, if any, vacant dwelling houses for rent, while there is a great demand for small dwellings from people who wish to live in the city, and one of the causes for the demand for such houses is the fact that the city has become a great railroad center, where converge five trunk lines, having their transfer yards just beyond the city limits, with more than 2,000 employees, very many of whom make desirable citizens. A large number of these employees, having for some time sought homes in the city of Alexandria and being unable to secure them, were forced to become residents of Washington, D. C., or

of Rosemont, Potomac, Braddock Heights and other sub-
divisions of the land proposed to be annexed to the city.
A number of the residents of the city, upon being unable
to procure within the corporate limits sites on which to
erect dwelling houses, have located outside of the city and
within the territory sought to be annexed. Improvements
are going on in the city, but for the past few years, as it
appears, such improvements have consisted chiefly of pull-
ing down old buildings and erecting better ones on the
sites, which of course benefits the city, but by no means
to the extent that would be derived from the erection of
new buildings on sites not heretofore built on, if such
there were.

While it appears that the health of the city is compara-
tively good, there can be no question that the density of
the population, the crowded and congested conditions
shown to exist therein, as well as the conditions existing
in the territory adjacent to the city and proposed to be
annexed, imperil the health of not only the city but the
citizens residing or conducting business adjacent thereto.
A city of the size of Alexandria must necessarily have a
park or parks of sufficient size and other grounds for
recreation and diversion, and it clearly appears that there
are no available spaces within the city for either. So that
the claim made in this case that the condition of Alexan-
dria, with respect to the density of its population and the
crowded way in which the land available for dwellings has
been built up, is worse than that of any city of its size, not
only in Virginia, but perhaps in the United States, is well
founded.

It is not a sufficient defense to the demand of the city,
that its corporate limits be extended for sanitary reasons,
to point to the fact that the health of its citizens is and has
been for some years good. A municipality has the right,
and it is its duty, to take such precautionary steps as may

reasonably be deemed necessary to secure to its population continued good health.    Notwithstanding the fact that the city of Alexandria, by reason of its location, was more severely devastated and crippled during the civil war than any other city in the State, finding itself at the close of that war of four years' duration indebted to an amount exceeding a million of dollars, contributed to works of internal improvement and totally lost, the present financial status of the city compares favorably with that of the other cities of its size in the State.    The city began in 1873 to pay off the principal of its debt, and there is now left outstanding about one-half of it, or about three-fourths of a million dollars, and this has been accomplished without increasing the assessment of property or advancing the rate of taxation thereon; in fact, the latter has been decreased from $2.00 to $1.80 per hundred.    The annual expenditures of all departments of the city government and for public improvements amount to nearly one hundred thousand dollars *per annum,* and in addition about three hundred thousand dollars has been spent during the past ten years for street improvements, sewers, curbing and paving streets; so that, in the words of some of the witnesses residing in the city, who testified in this case against annexation, the improvements in the past ten years have been "marked," "wonderful," "remarkable."

The evidence warrants also the claim made by the city, that its prosperity is indicated, not only in the change of the character of its business houses and homes, as they have been greatly improved, but by the enlargement of all lines of business; that bank deposits have doubled in the last few years; that the surplus money of the city's people has been invested to a large extent outside of the city, and most of it in the development of Alexandria county, especially that part of it proposed to be annexed; and that, in fact, the subdivisions of Rosemont, Braddock Heights, Park

Addition and Cottage Park have been built up in a large degree by the surplus capital of the city of Alexandria. Not only is the city's ground upon which its high school is, or is to be, located and constructed outside of the corporation's boundaries and in the territory sought to be annexed, but so also are its reservoir, poorhouse and cemetery.

The proof in this case shows that Alexandria city has an organized and equipped fire department that will, as to its efficiency, compare most favorably with that of any other city of the same size, and that its police force and regulations are ample and efficient; while the territory the city proposes to annex has absolutely no police protection, not a single officer in either Fairfax county or Alexandria county resides within said territory, and the present police department of Alexandria city has been furnishing the only police protection that the residents of that territory have had for some years. The present gas works of the city, the evidence shows, are sufficient to supply double the quantity of gas now being consumed, and gas mains are now laid through the subdivision of Rosemont and a large number of people residing there are consumers of gas furnished by the city.

From the land area in the city of a little over one square mile there is to be deducted about 190 acres not available for urban uses, which leaves the city with only a little over 500 acres upon which its citizens are to reside and its business of all classes is to be conducted, with little or no area upon which to locate and erect manufacturing plants or additional factories or like industries. The United States census shows that in 1910 Alexandria city had a population of 15,329, 72 1/3 *per cent.* white and 27 2/3 *per cent.* colored, and its land area given at one square mile, so that its density of population is 15,329 per square mile, which is greater than any city in the State. Such a density of

population is one of the strongest reasons that can be given for the extension of the city's limits, for, as a matter of common knowledge, to compel 15,329 people to live and conduct their business on one square mile of territory is not only a hardship but dangerous to their health, and militates greatly against their comfort as well as their welfare generally. In these circumstances it is not to be considered unusual or out of the ordinary course that many of the citizens of Alexandria, who might have desired to continue to live and transact their business in the city, to relieve their situation, built houses and conducted their business on the outside of the city in the subdivisions of the land adjacent to the corporation's boundary.

The policy of annexation, it was said by this court in *Henrico County* v. *Richmond City, supra,* as a public necessity, was determined by the legislature when it enacted this statute (*supra*) providing for its accomplishment when certain conditions were shown to exist. The court is called upon by the statute to express no opinion as to its wisdom as a matter of public policy. It has only to determine, upon the evidence adduced, the rights of the opposing parties in the particular case before it—whether, upon the facts and circumstances established by the evidence, the city is entitled to any extension at all, and if any, how much, and the terms and conditions upon which such extension shall be granted.

Our examination and consideration of the evidence in this case brings us readily to the conclusion that the circuit court should not have dismissed this proceeding, but should have adjudged and ordered therein that there be annexed to the city of Alexandria so much of the territory sought to be annexed as is necessary to include within the city's limits its high school with the necessary grounds attached thereto, its reservoir, and cemetery, the national cemetery, the roadbed and tracks of the Southern and the Washington

Southern railroads, from the point where they enter the city's boundary on the north to Hunting creek on the south, including the union station, freight depot and other buildings or lands of the said railroads, if any, adjacent to their union station and freight depot; also the lands west and northwest of the city's present boundary, known as Wheat and Suter's subdivision, Rosemont, Shooters' Hill, and West End, lying on both sides of the Little River turnpike, and also all lands, structures and streams that will be embraced within the city's boundaries by an extension of its northern boundary line westwardly to a point from which a line may be run southwardly and above the fork of Hooff's run near the Braddock road as shown upon the map of Alexandria county with the record in this case, to Janney's lane or road, thence southwardly and by the most practicable route to the center of Hunting creek; thence with the middle of the main channel of Hunting creek to its entrance into the Potomac river; and thence up the west line of the Potomac river to the point of the beginning of the present boundary line between the city and Fairfax county; all of the territory embraced within the lines indicated to become annexed to and form a part of the territory possessed and controlled by the city, upon the terms and conditions set forth in the ordinance adopted by the city council upon which this proceeding is founded.

The extension of the limits of the city, as indicated, and annexing to its present area the additional territory within the extended limits, is, as it appears to us, both necessary and expedient, and violates none of the established rules of law applicable in such cases, but would be entirely within both the letter and spirit of those rules as laid down and followed uniformly in the adjudicated cases and sanctioned by the law writers.

In *Kansas City* v. *Sigmiller*, 151 Mo. 189, 52 S. W. 723, it was held that land which is necessary to the city for drainage and police purposes may be included.

Land on which depots are located may be taken in. *Collins* v. *Crittenden*, 24 Ky. L. 899, 70 S. W. 183. And land necessary for the protection of the health of the city may be included, and extension of the city must be considered as a whole, and land necessary to foster and encourage the growth and prosperity of the city may be included. *Forbes* v. *Meridian*, 86 Miss. 243, 38 South. 676; *Catterlin* v. *Frankfort*, 87 Ind. 45; *Yancey* v. *Fairview*, 23 Ky. L. 2087, 66 S. W. 636; *Fredonia* v. *Rice*, 115 Ky. 443, 73 S. W. 1125; *Wahoo* v. *Tharp*, 45 Neb. 563, 63 N. W. 840; *Vestal* v. *Little Rock*, 54 Ark. 321, 329, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778.

In the last cited case the railroad depot near the municipality was located in the territory sought to be annexed, and the court held that it was proper to annex the depot for the reason that the inhabitants were dependent on it for shipping their freight, passenger, travel and mail; that there was no sidewalk from the boundary of the municipality to the depot, that one was necessary, and that failure to annex would retard prosperity, etc. That case is only distinguishable from this by the lone fact that the street and other approaches to the union station at Alexandria are well paved, the cost of same, without the city, having been defrayed by private subscription and the county authorities. This fact is not sufficient, as it appears to us, to control in the consideration of the cogent reasons alleged and proved why this union station should be within the corporate limits, control and police regulation of the city of Alexandria. See also *Bridge Co.* v. *Pt. Pleasant*, 32 W. Va. 328, 9 S. E. 231.

Among the rules governing in proceedings to annex outlying territory to a municipality, stated in 1 McQuillin on

Mun. Corp. 618-19, are the following which are in point here: "(4) Lands should be annexed when they are needed for any proper urban purpose, as for the extension of streets or sewers, gas or water system, or to supply places for the abode or business of residents, or for the extension of needed police regulation; and (5) when they are valuable by reason of their adaptability for prospective town purposes; but the mere fact that their value is enhanced by reason of their nearness to the corporation would not give ground for their annexation, if it did not appear that such value was enhanced on account of their adaptability to town uses."

On page 624 this learned author says: "The limits of a city cannot be extended to take in undivided lands merely for the purpose of increasing the city's revenue; but the mere question of the nature of revenue which a municipality may receive from territory sought to be annexed is no criterion by which to determine the reasonableness of the extension." And on page 625 it is said: "The fact that the territory will be subject to an additional or municipal tax is no reason why it should not be annexed to a municipality, where it will receive benefits in the way of reduced insurance rates, police protection, etc. So the fact that territory annexed to a municipal corporation will be subject to taxation to pay a pre-existing debt of the municipality is no objection to its annexation; and the fact that parts of territory annexed to a municipal corporation are low and marshy does not render the annexation unreasonable." See, also, *Wade* v. *Richmond City,* 18 Gratt. (59 Va.) 583.

In this case neither of the defendant counties have a bonded indebtedness, and the annexation to the city of Alexandria of the territory we have outlined to be taken, partly from one and partly from the other of said counties,

32

will not reduce the annual revenue that either is now receiving but little more, if any, than five *per cent.* thereof.

Invoking Rule VIII of this court, the defendant counties assign as cross-error the action of the circuit court in overruling their motion to quash the notice and ordinance of the city asking for annexation, and also the demurrer to the said notice and ordinance.

The first question presented on these cross-assignments of error is whether or not the ordinance complies with the requirements of the statute, that the terms and conditions upon which the city proposes to annex prescribed territory, as well as the provisions which are made for its future management and improvement, shall be set forth. It is contended that the ordinance in question wholly fails to comply with the latter requirement of the statute, in that it does not set forth any terms and conditions of annexation or provisions made for the future management and improvement of the territory to be annexed.

This contention is without merit. As we have observed, the ordinance is, *mutatis mutandis,* the same as that of the council of the city of Richmond which came under review in *Henrico County* v. *Richmond City, supra,* and clearly the sufficiency of the ordinance was a jurisdictional question which the court necessarily had to consider and determine affirmatively in that case before it could, as it did, affirm the judgment of the circuit court annexing certain territory of Henrico county to the city of Richmond. In the opinion of the court it is said: "We are further of opinion that the objection to the ordinance is untenable. The ordinance of the city of Richmond, which is the foundation of this proceeding, substantially complies with the statute, and sets forth the case of the city with as much fullness and detail as was practicable under the circumstances."

The contention made under the second assignment of cross-error is to the effect that, to construe the act in ques-

tion as authorizing the annexation of a portion of the counties of Fairfax and Alexandria to the city of Alexandria, and which constitute or are included in separate "house districts," would be a violation of the provision of section 43 of the Constitution of Virginia, which is as follows: "The apportionment of the State into senatorial and house districts, made by the acts of the General Assembly, approved April the second, nineteen hundred and two, is hereby adopted; but a reapportionment may be made in the year nineteen hundred and six, and shall be made in the year nineteen hundred and twelve, and every tenth year thereafter."

This contention is also without merit. The Constitution, section 126, requires that the General Assembly shall, provide by general laws for the extension and contraction from time to time of the corporate limits of cities and towns, and that no special act for that purpose shall be valid. Pursuant to this constitutional provision, the General Assembly enacted the statute, *supra,* conferring upon the circuit courts of the State the authority, within prescribed limitations, to extend or contract the corporate limits of cities and towns, and the enactors of our organic law must necessarily have understood and contemplated that the annexation of territory from a county to a city and *vice versa* would, in many if not every case, take into the city or county limits more or less inhabitants of the territory annexed and operate upon their municipal relations. Here, as in the act construed in *Wade* v. *Richmond City, supra,* the statute authorizing the circuit courts to order and declare annexation of additional territory to a municipality, or from a city to a county, is silent as to the right of voting and of representation pertaining under the Constitution to the inhabitants of the annexed territory. In the first named case it was an agreed fact that there were 14,000 inhabitants of the territory annexed to the city from

Henrico county, and a small area of territory taken from the city and annexed to the county, having presumably some inhabitants, and the court with respect to the political status and rights of the inhabitants of the territory annexed said: "They were left where the condition placed them; there was no necessity to indicate by law, upon such an event, where the people were to vote, or how they were to be represented. The Constitution was the only rule upon that head. * * * True their *municipal* government was changed; citizens of Henrico county ceased to be such, and became citizens of Richmond to that end alone, and *vice versa;* but constitutional limits still remained for the exercise of constitutional rights, and the enjoyment of constitutional privileges."

In the case in judgment we are of opinion that the order of the circuit court appealed from should be reversed and the cause remanded to that court to be further proceeded with in accordance with the views hereinbefore expressed; and as the appellant, the city of Alexandria, is the party substantially prevailing in this court, judgment for its costs in the proceeding will be awarded it against the defendant counties, to be borne by those counties in equal portions.

*Reversed.*