16323

HARRELL *ET AL.* v. CITY OF COLUMBIA *ET AL.*
MOORE *ET AL.* v. CITY OF COLUMBIA *ET AL.*
(58 S. E. (2d) 91)

348

*Messrs. A. W. Holman, D. McK. Winter* and *W. H. Jolly,* all of Columbia, for Appellants,

*Messrs. Paul A. Cooper, John W. Sholenberger* and *Glenn O. Schultz,* all of Columbia, for Respondents,

March 3, 1950.

L. D. LIDE, Acting Associate Justice.

These two companion cases were heard together in the Circuit Court and before this Court. The case first above stated is sometimes referred to in the record as the *Harrell case,* and relates to the annexation of the area known as East

Edgewood to the City of Columbia; and the second case, sometimes referred to in the record as the *Moore case,* relates to the annexation of the area known as West Edgewood to the City of Columbia.

The validity of the annexation of these areas, the previous elections relating to such annexation having resulted in favor thereof, has been questioned by the plaintiffs in the causes respectively, the complaints being based upon certain alleged irregularities, and the proceedings are also impugned upon alleged grounds of unconstitutionality; and judgment is sought declaring the elections null and void and granting injunctive relief. Rules to show cause were duy issued on September 20, 1949, by Judge Greneker, then presiding in the Fifth Circuit, and returns to the rules and answers to the complaints were filed in due time, and the matter was heard before him on October 18, 1949, upon the testimony then taken in behalf of the respective parties. Upon due consideration Judge Greneker handed down his orders adjudging that the complaints should be dismissed and the rules to show cause dissolved; and the cases come before this Court upon the appeals of the plaintiffs.

There are nine exceptions, which we think may be summarized in four questions as follows: (1) Did the Circuit Judge err in holding that the petitions were accompanied by adequate descriptions of the areas involved? (2) Did the Circuit Judge err in holding that the City Council properly determined that a majority of the freeholders signed each of the petitions for the elections? (3) Did the Circuit Judge err in holding that the notices of the elections constituted a sufficient compliance with the statute? (4) Did the Circuit Judge err in holding that the plaintiffs were not deprived of their constitutional rights? These questions, in connection with the various exceptions, will be duly considered herein.

Preliminary, however, to such consideration we should first make reference to the underlying statute relating to the

annexation of additional territory to a municipal corporation, the same being Code, Section 7230, as amended in 1948, Acts 1948, page 1974. And we should also recount the proceedings relating to the elections prior to the institution of these actions.

Our Constitution, Article VIII, stipulates that the General Assembly shall provide by general laws for the organization and classification of municipal corporations, but contains no reference to the extension or contraction of the corporate limits of any municipal corporation, save and except that Section 14 of this article contains certain specific amendments to the Constitution on this subject, all of which, however, relate solely to the City of Greenville, and hence have no application here.

Section 7230, as amended, provides that any town or city council shall have power to extend the corporate limits thereof in a specified manner, to wit, that a petition shall first be submitted to the council by a majority of the freeholders of the territory proposed to be annexed, accompanied by an adequate description thereof, praying that an election be ordered upon the question. And it is further provided that if the city or town council shall find that the petition has been signed by a majority of the freeholders, they shall certify that fact to the County Commissioners of Elections, who shall thereupon order an election to be held within the corporate limits of the municipality and within the territory proposed to be annexed, on the same date, on the question of annexation; and this election shall be a special election, of which the County Commissioners of Elections shall give at least ten days' notice prior to the date set for the election, by posting such notice or by publication thereof in a newspaper of general circulation. Only registered, qualified electors residing in the municipality and those residing within the territory proposed to be annexed shall be allowed to vote; and the votes cast in such election within the corporate limits of the municipality and the votes cast within the territory proposed to be annexed "shall be counted separately

and the results thereof declared separately"; and if a majority of the votes cast in the municipality and in the territory proposed to be annexed, "each aggregated separately, shall be each in favor of the annexation, or if neither give a majority against annexation, then the council shall publish the result of said election and declare the annexed territory" a part of the municipality.

Purporting to act in accordance with this statute, petitions were filed with the City Council as to East Edgewood and as to West Edgewood. Each of these petitions purports to be signed by freeholders of the territory therein described; and the description of the same is set forth in detail.

After the filing of these petitions the City Council of the City of Columbia filed their certificate, dated July 20, 1949, and signed by the Mayor and the four Councilmen, certifying that the City Council had determined that a majority of the freeholders within the respective territories, descriptions of which were attached to the certificate, had by proper petitions asked that an election be held for the purpose of voting on whether or not the respective territories should be annexed to the City of Columbia. It is further stated therein that the City Council requested the Richland County Commissioners of Elections to order a special election on September 13, 1949, pursuant to the statutory law of the State and particularly Code Section 7230, as amended.

Pursuant to this section the Commissioners of Eelections promptly gave notice of the elections, the notice being published in The State, a newspaper published at Columbia, on July 23, 1949, and the same stated that the elections would be held on September 13, 1949; and the territories proposed to be annexed were described as in the petitions.

The notice just referred to did not give the polling places or the names of the managers and clerks, but a later notice was given by the Commissioners setting forth the various polling places in the City of Columbia, and also the polling places in East Edgewood and West Edgewood, the latter

two being as follows (omitting the names of the managers and clerks) :

"East Edgewood—Edwards Service Station, 2114 Two Notch Road".

"West Edgewood—Flakes Cleaners and Laundry, 2201 Two Notch Road".

This notice was published in The State on September 9, 1949.

The elections were held on September 13, 1949, and the results thereof were that in East Edgewood (the *Harrell case*) there were 271 votes cast, of which 171 were in favor of annexation and 100 against annexation; and in West Edgewood (the *Moore case*) there were 90 votes cast, of which 63 were in favor of annexation and 27 against annexation.

*Question (1). Did the Circuit Judge err in holding that the petitions were accompanied by adequate descriptions of the areas involved?*

Code, Section 7230, as amended, very properly provides that there shall be an "adequate" description of the territory proposed to be annexed; and the word "adequate" would imply a correct description, in sufficient detail, to put all parties in interest on notice of what was covered thereby; and the accuracy of the descriptions before the Court is really not questioned. Indeed, it is admitted that they are adequate for the purposes of a legal document or the purposes of a surveyor; it merely being contended that the descriptions would not convey to the mind of the average petitioner or freeholder the exact area or boundaries thereof proposed to be annexed. But we do not so read the descriptions. On the contrary, they seem to us to be quite sufficient to enable a person of ordinary reason and intelligence to identify the property involved.

By way of illustration, the description of East Edgewood is in part as follows : "Beginning at the Southeastern corner of Glenwood Road and Forest Drive

and running in a Northeasterly direction along the Southern boundary of Forest Drive to the Town limits of the Town of Forest Acres"; and there follows a detailed description of the other boundary lines of the area, closing with the following words: "thence turning and running in a Southerly direction across the Forest Drive to the Southeastern corner of the intersection of Forest Drive and Glenwood Road and the point of beginning". The manner of the description of West Edgewood is quite similar. The references to roads, drives, highways and adjacent boundaries are so clearly expressed that we do not think the adequacy of the description may be properly impugned; and hence no error in this respect was committed by the Circuit Judge. See *City of Alexandria v. Alexandria County,* 117 Va. 230, 84 S. E. 630. Incidentally it may also be observed that there is no evidence that anyone was misled or prejudicially affected by the method of description.

The suggestion of counsel for the appellants that reference to a map or a plat should have been a part of the description is not warranted by the language of the statute.

*Question (2). Did the Circuit Judge err in holding that the City Council properly determined that a majority of the freeholders signed each of the petitions for the elections?*

This question includes two separate exceptions, one to the effect that the Circuit Judge erred in holding that the City Council's certificate was in itself a proper determination that a majority of the freeholders had signed the petitions; and the other being that the Circuit Judge erred in failing to hold that the testimony conclusively shows that the City Council made no proper determination of the fact that the petitions were signed by a majority of the freeholders.

It was the duty of the City Council to determine, as a question of fact, whether or not the petitions had been signed by a majority of the freeholders within the territory; and they so found, as definitely and explicitly appears from their certificate. It is true that the certificate

might be questioned, if there were charges or evidence of fraud; or in some circumstances if there were charges or evidence of accident or mistake. But there are no such charges or evidence here. Indeed, the appellants' contention in this respect seems to rest mainly upon the fact that the findings of the City Council are not more fully set forth in the minutes of their meeting, although there is no law containing such a requirement. Furthermore, it is admitted that the minutes do show that Mr. W. M. Shand stated to the City Council that out of 385 freeholders in West Edgewood 345 names had been secured or 90 per cent. of the property owners, and in East Edgewood 570 signatures out of 650 freeholders, or 75 or 80 per cent. of the total. Besides, there is no testimony whatever before the Court tending to show that either of the petitions was signed by less than a majority of the freeholders. Hence, in any view of the matter, we are of opinion that there was no error in this respect on the part of the Circuit Judge.

*Question (3). Did the Circuit Judge err in holding that the notices of the elections constituted a sufficient compliance with the statute?*

There are three exceptions relating to this matter, two of which are based upon the fact that the notice published September 9, 1949, stating the polling places was not published at least ten days prior to the date of the elections; while the other exception imputes error to the Circuit Judge in holding that an irregularity in the advertisement of a particular polling place was not sufficient to vititate the election.

It will be recalled that the first notice of the elections was published July 23, 1949, considerably more than ten days before the election, to wit, fifty-one days, and this notice contained the vital matters with reference to the elections, to wit, that the same would be held on September 13, 1949; and the description of the property was given. This really afforded notice of the more essential things, because the actual places of voting could be finally ascertained on in-

quiry. However, the notice published September 9th giving the polling places was published about four days before the elections, instead of ten days, and it is urged that in this respect the notice did not comply with the provisions of the statute; and that this was a special election and the place of voting was an important feature thereof.

Section 7230, as amended, does not make any reference to the place of voting, but the general rule is that as to special elections notice should be given of the polling place. *Croxton v. Truesdel,* 75 S. C. 418, 56 S. E. 45. However, substantial compliance with the law is all that is required; and in view of the fact that while the first notice did not contain the polling places, this was supplied by the supplementary notice published on September 9th, and the elections were duly held on September 13, 1949, we are of opinion that there was sufficient compliance with the spirit and purpose of the law. *Phillips v. City of Rock Hill,* 188 S. C. 140, 198 S. E. 604, 119 A. L. R. 656. See also *Verner v. Muller,* 89 S. C. 117, 71 S. E. 654.

But even if this be deemed to be an irregularity, the same cannot be effective to invalidate the elections, in the absence of a showing that by reason of such irregularity some person or persons were deprived of their right to vote, or that the result of the elections was thereby changed or rendered doubtful. On the contrary, the record shows that Judge Greneker carefully questioned various witnesses with regard to whether or not they had been misled by the notice, and whether or not there had been any disorder or confusion at the polls on the election day. And we quote the following from his order: "Each witness replied in the negative. No person testified that he or she failed to find the voting place and none testified that they did not vote by reason of confusion". It follows therefore that this irregularity, if it be such, is immaterial. The rule is thus stated in the case of *State ex rel. Welsh v. State Board of Canvassers,* 79 S. C. 246, 60 S. E. 699, 700: "Unless the result of an

election is changed or rendered doubtful, it will not be set aside on account of mere irregularities or illegalities. *Wright v. State Board of Canvassers,* 76 S. C. [574], 588, 57 S. E. 536; *State ex rel. Birchmore v. State Board of Canvassers,* 78 S. C. 461, 59 S. E. [145], 146 [14 L. R. A., N. S., 850, 13 Ann. Cas. 1133].

It also appears that notice of the place of the election in East Edgewood contains a slight *idem sonans* clerical error, because it is given as *Edwards* Service Station, whereas, it should have been *Edgewood* Service Station. However, the notice correctly gave the place as 2114 Two Notch Road. We do not think this error is sufficient even to constitute an irregularity, since one could scarcely claim to be misled because of the slight difference in the name of the service station, in view of the accuracy of the number of the place. But if it be considered an irregularity, the rule of law above stated would obviously be applicable under the testimony, and the validity of the election cannot thereby be affected.

*Question (4). Did the Circuit Judge err in holding that the plaintiffs were not deprived of their constitutional rights?*

This question is covered by three of the appellants' exceptions, two of them relating to "due process" and the other relating to "taxation without representation".

Upon the hearing in the Court below the contention of the plaintiffs that they were deprived of due process of law apparently was based on the allegations of the complaints that there was accorded to them no hearing before the City Council on the matter of the determination of whether or not a majority of the freeholders had signed the petition; but the exceptions may be more broadly construed to cover the position that Section 7230, as amended, otherwise conflicts with the due process constitutional clause Article I, Section 5, and both aspects of the matter will be considered.

Admittedly there is nothing in Section 7230, as ██ amended, requiring a hearing on the question of whether or not a petition for an annexation election has been signed by a majority of the freeholders, and we perceive no reason for such a hearing, this being a factual question, determinable mainly from the records. But there is an additional reason why the appellants' position in this respect is untenable, and that is, that although they had ample time and opportunity to do so, they made no request for a hearing; and we are in agreement with the Circuit Judge that they cannot now be heard to say that they were deprived of their rights without due process of law in this particular. *City of Columbia v. Shaw,* 131 S. C. 464, 127 S. E. 722; 12 Am. Jur. 310.

It should be borne in mind in the consideration of ██ all the constitutional objections raised by this appeal that the law is well settled that the annexation of territory to a municipal corporation is a *legislative* function and not a judicial one, and the following statement of the law contained in 37 Am. Jur. 639 is well supported by the authorities: "In the absence of constitutional limitations, it is generally considered that the power of a state legislature over the boundaries of the municipalities of the state is absolute and that the legislature has power to extend the boundaries of a municipal corporation, or to authorize an extension of its boundaries, without the consent of the inhabitants of the territory annexed, or the municipality to which it is annexed, or even against their express protest."

We do not, however, have before us legislative action so drastic as that referred to in the quoted excerpt, for the provisions of Section 7230, as amended, provide for a much more democratic exercise of legislative power.

The question of whether the extension of the boundaries of a municipal corporation may be deemed unconstitutional, because depriving the people of the annexed territory of their property without due process of law, especially by

reason of additional taxation arising out of the existing indebtedness of the municipal corporation, has been considered in a number of cases from other jurisdictions, as will fully appear by reference to the annotation contained in 64 A. L. R. beginning on page 1355. And perhaps the leading case on this subject is the United States Supreme Court case of *Hunter v. Pittsburgh,* 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151, wherein it was held that the citizens and taxpayers of a lesser municipality, annexed, under the authority of a Pennsylvania act, to an adjoining and larger municipality, are not deprived of their property without due process of law by reason of the burden of additional taxation resulting from the annexation, although the method of voting prescribed by the statute permitted the voters of the larger city to overpower the voters of the smaller one, because there was required only the majority of the votes cast in the whole territory within the limits of both cities. But it should be especially noted here that our own statute contains no such provision, but gives to the city and to the territory proposed to be annexed an equal voice in the matter, which seems to be a much fairer provision, conflicting with no constitutional requirement.

The following additional statement with regard to ██ ██ the law, taken from 37 Am. Jur. 646, likewise appears to be quite correct, and is appropriate in this connection: "It is held by the great weight of authority that the courts cannot interfere with the annexation of territory to a municipal corporation even if the effect is to subject the annexed territory to taxation for municipal purposes from which it derives no benefit. A statute providing for the annexation of territory to an existing municipality is not objectionable because it may result in the taxation of property within the annexed territory to pay a preexisting indebtedness of the municipality to which it has been added."

Counsel for the appellants also charge violation of Section 7 of Article I of our Constitution, reading as follows: "No

tax, subsidy, charge, impost tax or duties shall be established, fixed, laid or levied, under any pretext whatsoever, without the consent of the people or their representatives lawfully assembled."

This is a classic statement of constitutional protection against taxation without representation, but we do not think it was in anywise violated in the cases before us. For we are dealing with *legislative* matters under the control of the General Assembly, directly representing the people.

The following quotation from the opinion in the annotated case of *State ex rel. Richards v. Cincinnati,* 52 Ohio St. 419, 40 N. E. 508, 513, 27 L. R. A. 737, 750, is in our judgment soundly based on reason and authority, and really conclusive of the particular phase of the appeals now under consideration: "But the power of taxation does not rest upon the consent of the taxed, except as that consent is implied or shown in the enactment of laws by the representatives of the people, or is made requisite by legislation; and therefore taxes may be imposed, or authorized by the legislative body, within its discretion, for all public purposes, so long as the fundamental law is not violated. We cannot think that because the annexation authorized by the statute may result in the taxation of property, without the owner's consent, for the payment of the lawful indebtedness of the annexing corporation, the passage of the act was a usurpation of legislative power."

The annexation of territory to an existing city or town must often result in appreciable benefits to the residents of the annexed territory, and we may assume that the majority of the voters at the elections in question here concluded that such benefits outweighed the risks of increased taxation. And, as was pointed out by Judge Greneker, the appellants offered no proof that the territory proposed to be annexed would receive no benefit therefrom.

It follows therefore that all four of the questions above discussed should be answered in the negative; that the exceptions should be overruled; and that the well considered orders from which the appeals are taken should be affirmed.

Affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., not participating.