CASE 52—ACTION BY HENRY RICE AND OTHERS AGAINST THE TOWN OF FREDONIA, TO PREVENT THE EXTENSION OF THE CORPORATE LIMITS OF THE TOWN.—MAY 1.

# Town of Fredonia v. Rice and Others.

APPEAL FROM CALDWELL CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS.   REVERSED.

MUNICIPAL CORPORATIONS—EXTENSION OF CORPORATION LIMITS—AN-NEXING NEW VILLAGE AND RAILROAD STATION—REMONSTRANCE.

Held:   1. The board of trustees of the town of Fredonia which has about 250 inhabitants, by an ordinance duly passed, proposed to extend its corporate boundary so as to take in a railroad sta-tion recently established outside of its corporate limits, but within 800 yards of the center of the town, and so as to take in a new village sprung up around the station, of about 140 in-habitants, against the protest of more than seventy-five per cent. of the citizens within the territory proposed to be an-nexed.   HELD, that the matter of police protection, street im-provements, and all the affairs of such local government can best be conserved by uniting their efforts, taxes and inter-ests, and a judgment of annexation is therefore ordered to be entered in conformity with said ordinance.

P. H. DARBY AND JAMES & JAMES, ATTORNEYS FOR APPELLANT.

Fredonia is a small town of the sixth class, with between 200 and 250 inhabitants and is an intelligent, substantial and public spirited community.

In 1886 when the O. V. Railway was being built, the people of Fredonia subscribed $10,000 of the stock of said company to induce the company to bring its road within 1,000 yards of the center of the town and establish a station near the town to

be called Fredonia, and this was done, the station being established about 900 yards from the center of the town. S. H. Cassidy and others purchased a tract of about seventy acres lying partly between the station and the town, and partly within the limits of the town, laid it off into lots and streets, and sold lots described in the deeds as "Cassidy's addition to the town of Fredonia." About 180 people gathered upon this addition, engaged in various pursuits, some in the addition, some in Fredonia, and some outside. Finally a post office was established in this addition, asked for by the people thereof, and gave it the name of "Kelsy." Later the town of Fredonia took legal steps to extend its corporate limits so as to include this addition. More than seventy-five per cent. of the people proposed to be annexed, remonstrated, and at the same time filed their petition to be incorporated as a separate town. The two proceedings were consolidated, and Special Judge Bishop granted the prayer of the inhabitants of the territory, and incorporated them as a separate town under the name of "Kelsey," and from this judgment the town of Fredonia has appealed.

While admitting that the statute, section 3665, has gone far towards making the mere will of the inhabitants of the territory proposed to be annexed, supreme, it has not done so. It requires them to set out in remonstrance their reasons against annexation, and provides that it shall occur notwithstanding their objection if the court shall find that a failure to annex will materially retard the prosperity of the town and of the territory sought to be annexed.

Among many reasons why these two towns should be under one corporate organization are these:

1. Their proximity to each other would produce an undue rivalry and jealousy and bring about confusion and discord.

2. The expense of maintaining two separate sets of officials would be saved.

3. The continuance of evils incident to very small towns would be avoided.

4. Corporate revenues would be increased and corporate interests increased in the same proportion.

5. A town of 400 active enterprising people can and will better attain the ends of local government than one of half that size.

6. Better schools can be maintained and better teachers employed.

7. Better churches can be built and better congregations secured.

Whilst many other reasons may be assigned there can be no substantial ones given for having two separate municipal governments thus adjoining, and neither strong enough to be self-

Town of Fredonia v. Rice and Others.

sustaining.    We therefore respectfully ask that the judgment below be reversed and the territory described in the ordinance be annexed.  Kentucky Statutes, sections 3664, 3665, 3710, 3713.

WM. MARBLE, FOR APPELLEE.

### CLASSIFICATION OF POINTS.

1. On hearing these cases the court refused to annex and granted "Kelsey," an incorporation as a separate town.  The statute under which this incorporation is made, section 3715, Kentucky Statutes, provides that no appeal shall lie from the decision of the circuit court.  To reverse this case on the annexation question would be a reversal on the incorporation, and would be doing the thing prohibited by the statutes.

2. The finding of the chancellor on a question of fact will not be disturbed by this court unless flagrantly wrong.  Railroad v. Woolley, 12 Bush, 453;  Fraley v. Peters, 12 Bush, 470;  Collins v. Town of Crittenden, 12 Law Rep., 899.

3. More than seventy-five per cent. of the inhabitants of "Kelsey" protest against annexation and desired a separate organization.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellant is a classified town of the sixth class, with a population of between 240 and 250.  It is an old town situated in a fertile section.  About 1886 the Ohio Valley Railway Company, in projecting their line of road, were about to pass several miles away from this town.  The citizens interested themselves in an effort to procure its location near the town.  As a result, they subscribed, and procured others to subscribe, for about $8,000 to $10,000 of the capital stock of the company, upon condition that the road was located within 1,000 yards of the center of the town, and that the station to be there established should always bear the name of the town.  This subscription is alleged to have amounted to, and likely enough was in the nature of, a donation to the railway company.  The owner of the land near the town over which the road passed in its changed route conveyed a right of way to the company,

including a depot site, upon the express condition that the company should locate and maintain a station at that point, to bear the name of the town "Fredonia," until the name of the town should be changed, and then bear such changed name. In other words, the station should always be called by the same name as was borne by the then municipality of Fredonia. The railway company accepted the subscriptions, donations, and conveyances upon these conditions, and has erected its station within 800 yards of the center of the town of Fredonia. The station is called "Fredonia." However, the corporate limits of the town did not extend out to the depot, by a quarter of a mile or more. In the course of time since the building of the railroad a number of buildings, residences, stores, shops, churches, and so forth, have been erected outside of the corporate limits of the town, and in the vicinity of the railroad depot. The owner of the land lying near the depot platted it into streets and lots, designating it in numerous deeds as "Cassidy & Co.'s Addition to Fredonia." The population of this unincorporated village is about 140. The board of trustees of Fredonia, by ordinance duly passed, proposed to extend its corporate limits so as to embrace the territory described, including the railroad station. The citizens of the territory proposed to be annexed—more than 75 per cent. of the freeholders—interposed an objection, in the form of this suit, under section 3665, Ky. St., 1899. At the same time they began proceedings to be incorporated as a town of the sixth class, under the name of "Kelsey."

In our opinion it would be destructive of the proper government of that community to have it maintain two independent municipalities, where now its population is scarcely able to maintain even one efficient one. The matter of police protection, street improvements, and all the

affairs of such a local government, can best be conserved by uniting their efforts, taxes, and interests. There is no sound reason why two municipalities, so situated as these are, should be maintained. The arguments in support of it are of that character of selfishness that would retard, if not destroy, any town's chances of growth. "In union there is strength."

The judgment of the circuit court sustaining the objections of the citizens of the territory proposed to be annexed is reversed, and the cause is remanded, with directions to enter a judgment of annexation in conformity to the ordinance passed by the board of trustees of appellant town.

Judge Nunn not sitting.

Petition for rehearing by appellee overruled.