Points Decided.

(August 3, 1925.)

## BOISE CITY, a Municipal Corporation, Respondent, v. BOISE CITY DEVELOPMENT COMPANY, LTD., a Corporation, and H. L. SMITH, Jr., Appellants.

## BOISE CITY, a Municipal Corporation, Respondent, v. MARTHA J. JOHNS, Appellant.

[238 Pac. 1006.]

Nonsuit—Municipal Corporations—Annexation—Ordinances—Evidence—Eminent Domain—Streets.

1. When a motion of nonsuit is made at the close of plaintiff's evidence and is denied, and the defendant thereafter submits evidence in support of the defense, the motion for nonsuit is waived, unless renewed at the close of all the evidence.

2. In the exercise of the power of eminent domain a city council may determine the location of land required for municipal purposes and such determination if made in good faith will not be interfered with by the courts.

3. Land to be annexed under C. S., sec. 3850, must be contiguous or adjacent to a city, town or village.

4. Land to be annexable under C. S., sec. 3850, must, as to part thereof, have been, by the owner or proprietor, or with his authority or acquiescence, either laid off in lots or blocks containing not more than five acres of land each, or the owner or proprietor, or some person with his authority, must have sold or begun to sell such lands, by metes and bounds, in tracts not exceeding five acres.

5. Under C. S., sec. 3850, portions of the owner's original holdings still remaining in his possession after platting or selling, in addition to that so platted or sold or commenced to be sold, may be annexed.

6. Evidence examined and *held* to show that the appellant has begun to sell and has sold in less than five-acre tracts portions of her original holdings, and that the city council did not abuse its discretion in annexing, by proper ordinance, the portions of her land designated in said ordinance.

Publisher's Note.

3. Necessity that property annexed by municipal corporation be adjacent or contiguous, see note in **Ann. Cas.** 1913D, 401.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Dana E. Brinck, Judge.

Actions to condemn lands for purpose of road. Judgments for plaintiff. *Affirmed.*

Wm. Healy, for Appellant Johns; J. R. Smead, for Appellants Boise Development Co. and H. L. Smith, Jr.

Where statutory conditions are imposed, they must be strictly observed. (1 McQuillin, Munic. Corp., sec. 282; *People v. Long Beach,* 155 Cal. 604, 102 Pac. 664; *Pensacola v. Pensacola & A. Ry. Co.,* 21 Fla. 492; *Stilz v. Indianapolis,* 55 Ind. 515; *Stewart v. Adams,* 50 Kan. 560, 32 Pac. 122; *Bardstown v. Hurst,* 121 Ky. 119, 89 S. W. 147, 724; *Lebanon v. Knott,* 24 Ky. L. 1992, 72 S. W. 790; *Matter of Matthews,* 59 App. Div. 159, 69 N. Y. Supp. 203; *Stewart v. Schoonmaker,* 50 Kan. 573, 32 Pac. 913; *Brown v. Silverton,* 97 Or. 441, 190 Pac. 971; *Sharkey v. Butte,* 52 Mont. ·16, 155 Pac. 266; *Pueblo v. Stanton,* 45 Colo. 523, 102 Pac. 512.)

When a power arises from the occurring of facts extraneous to the official actions of city officers, the power is not presumed, but the city must show that it existed by proving the pre-existence of the necessary facts. (*Reynolds v. Schweinefus,* 27 Ohio, 311; *Hammond v. Baddeau,* 134 La. 871, 64 So. 803; *State v. Threadgill,* 76 N. C. 17; *Dunham v. Rochester,* 5 Cow. (N. Y.) 462; *Chandler v. Kokomo,* 137 Ind. 295, 36 N. E. 847; 1 McQuillin, Munic. Corp., secs. 284, 286, 856 (Supp.); *Ernsperger v. Mishawaka,* 168 Ind. 253, 80 N. E. 543; Jones, Evidence, sec. 514; *Larkin v. Burlington, C. R. & N. Ry. Co.,* 85 Iowa, 492, 52 N. W. 480.)

The offer of evidence of an ordinance, or a record of proceeding, does not tend to prove that the power to act existed. It must be otherwise proven that the power existed at the time the action was taken. (*City of Benwood v. Wheeling R. Co.,* 53 W. Va. 465, 44 S. E. 271; *Schott v. People,* 89 Ill. 195; 2 Dillon, Munic. Corp., sec. 649.)

Where a municipality claims to have acted by virtue of power delegated to it by statute, the power claimed in the premises must appear plainly and without ambiguity in the language of the statute. (*State v. Frederic*, 28 Ida. 709, 155 Pac. 977; *Turner v. Roseberry*, 33 Ida. 746, 198 Pac. 465; *Bradbury v. Idaho Falls*, 32 Ida. 28, 177 Pac. 388; *People v. Long Beach, supra; Stewart v. Adams, supra;* *State v. Superior Court*, 110 Wash. 506, 188 Pac. 546; Lewis, Eminent Domain, sec. 371, p. 681, *Wibaux Imp. Co. v. Breitenfeldt Co.*, 67 Mont. 206, 215 Pac. 222; *State v. District Court*, 67 Mont. 164, 215 Pac. 240.)

Eminent domain cannot be exercised because of the needs of another than the party exercising it. (*Spokane v. Spokane & I. E. Ry. Co.*, 75 Wash. 651, 135 Pac. 636.)

Power is not held to be implied except where such implication is necessary in order to accomplish the purpose of the statute. (*Crofut v. Danbury*, 65 Conn. 294, 32 Atl. 365.)

Plea of great public benefit does not alter the rule of strict construction of statute claimed to delegate power. (*Vermont H. E. Corp. v. Dunn*, 95 Vt. 144, 112 Atl. 223, 12 A. L. R. 1495, 1502.

J. J. McCue, J. P. Pope, C. S. Hunter and Henry Z. Johnson, for Respondent.

In the exercise of the power of eminent domain, a city council may determine the location of the land required, and such determination will not be interfered with by the courts if made in good faith. (20 C. J. 632–634; *City of Pasadena v. Stimson*, 91 Cal. 234, 27 Pac. 604; *Chicago & N. W. Ry. Co. v. Morrison*, 195 Ill. 271, 63 N. E. 96; *Bennett v. Marion*, 106 Iowa, 628, 76 N. W. 844; *Burnett v. Boston*, 173 Mass. 173, 53 N. E. 379; McQuillin on Munic. Corp., sec. 1466; *Castro Point Ry. & Terminal Co. v. Anglo Pacific Dev. Co.*, 33 Cal. App. 418, 165 Pac. 544; *Santa Ana v. Brunner*, 132 Cal. 234, 64 Pac. 287; *Kansas & Texas Coal Ry. v. N. W. Coal & Min. Co.*, 161 Mo. 288, 84 Am. St. 717,

61 S. W. 684; *City of Seattle v. Byers,* 54 Wash. 518, 103 Pac. 791.)

The annexation Ordinance No. 1405 was properly admitted in evidence, the existence of the necessary facts to sustain such ordinance being presumed. The lower court did not err in denying motion for a nonsuit. (*State v. City of Atchison,* 92 Kan. 431, Ann. Cas. 1916B, 500, 140 Pac. 873; *Blake v. City of Pleasantville,* 87 N. J. L. 426, 95 Atl. 113; *American Fork City v. Chalier,* 43 Utah, 231, 134 Pac. 739; *State v. City of Maplewood* (Mo. App.), 193 S. W. 989; *Haywood v. New York Cent. & H. R. R. Co.,* 59 Hun, 617, 13 N. Y. Supp. 177; McQuillin on Mun. Ord., sec. 384; McQuillin on Mun. Corp., secs. 794, 860; *Horner v. City of Atchison,* 93 Kan. 557, 144 Pac. 1010; *State v. City of Harper,* 94 Kan. 478, Ann. Cas. 1917B, 464, 146 Pac. 1169, 1170; note, Ann. Cas. 1916B, pp. 502–504; *Harmon v. City of Chicago,* 140 Ill. 374, 29 N. E. 732.)

C. S., sec. 3850, should be so construed as to effect the intention of the legislature. (Lewis' Sutherland on Stat. Construction, sec. 521; Black, Interpretation of Laws, sec. 47.)

C. S., sec. 3850, is an express grant of power, and the extent to which that power shall be exercised rests in the discretion of the municipal authorities, so long as it is exercised in good faith and for a municipal purpose. (19 R. C. L. 770; *State v. Tampa Water Works,* 56 Fla. 858, 47 So. 358, 19 L. R. A., N. S., 183; *Lucia v. Montpelier,* 60 Vt. 537, 15 Atl. 321, 1 L. R. A. 169, and note.)

GIVENS, J.—By stipulation the case of *Boise City, a Municipal Corporation, v. Martha J. Johns,* together with that of *Boise City, a Municipal Corporation, v. Boise Development Company, Ltd., a Corporation, and H. L. Smith, Jr.,* were consolidated for hearing; involving questions of public importance, the parties asked for a speedy hearing and disposition of the cases, which was granted.

The appeals were taken respectively from judgments entered by the lower court, that Boise City was authorized to

condemn certain property of the respective appellants for the purpose of laying out, opening and constructing a highway, adjudging inferentially that certain of the lands so sought to be condemned had been properly annexed. By stipulation both appeals are based on one transcript of the evidence.

Considering the Johns case first we proceed:

Boise City was originally created by an act of Congress, with Boise River as a boundary line. (Act of July 11, 1866, Special and Local Laws of Idaho, p. 22.) The subdivision of the appellant lying south of the Boise River was later annexed and the south boundary line of the subdivision became the city limits.

In 1923, the Oregon Short Line Railroad Company located its main line, and passenger depot thereon, some distance to the south of the city limits of Boise City, on an elevated plateau, known as the "bench."

After the location of the railroad depot, the city council decided to extend Seventh Street from north of Boise River as a boulevard, thence through the middle of the platted subdivision owned by appellant Development Company and through the Johns' and other property in a straight line to such railroad depot. For about the last thousand feet the side-lines of the proposed approach diverged to form a wider tract, designed as the base of a fill, the highway to be elevated on a grade of five feet to each hundred of lineal distance, eventually rising at the extreme end, to the elevation of the bench upon which the station stands, a height of about thirty feet.

The highway so projected is planned to run through its entire course diagonally across, and at an elevation considerably above the elevation of existing streets and sidewalk levels upon appellant company's property. On reaching appellant Johns' property, the proposed five per cent grade commences.

A paved street runs through the Development Company's property, known as Ninth Street pike, which connects at its north end with Eighth and Ninth Streets in Boise City

at the Ninth Street bridge spanning the Boise River, and at the southerly end joins a partially paved county road, which continues thence to the depot, the city cemetery and other points. The proposed new road, roughly speaking, as far as the depot, parallels the existing county road at a short distance west thereof and would take the place of the same in affording access to the railroad depot, the cemetery and the country beyond.

Later, a contract was contingently let for constructing that part of the proposed road from the point where it crossed Ninth Street pike in approximately the center of appellant company's property, to the depot, and at a city election, bonds in the sum of $115,000 were voted for this purpose.

Still later, in February, 1925, these and related condemnations were commenced. In each action, the complaint describes that part of the proposed highway, which, as surveyed and staked out by the city engineer, lies within the existing property lines of each respective defendant. Putting the several tracts so separately described together constitutes the proposed road as laid out by the city.

Ordinance 1405 in question here, effective February 9, 1925, brought into the city the station and grounds surrounding the same and some territory adjacent thereto and all of the land sought by the city and necessary for the construction of the proposed street or approach boulevard. The lands belonging to the Development Company were already within the city limits and the only land annexed, affected by these two appeals, was about two and one-half acre of the land belonging to Martha J. Johns. This annexation ordinance was passed, as stated therein, because the property was desired for a public use. The inclusion of such recited reason was surplusage. When property is annexed to a city, the purpose of the ordinance is to include within the limits of the city territory described in the ordinance, and such annexed territory becomes a part and portion of the entire municipality. The purpose of an ordinance of annexation is to annex property not theretofore within the municipal boundaries. The property annexed is subject to use for streets, alleys, parks or any other lawful municipal purpose.

"The ordinance was enacted in pursuance of this statute, and its subject matter was plainly within the authority expressly granted. Under such circumstances the motives and purposes inducing the passage of the ordinance are irrelevant, and the courts will not inquire into or consider a change of an improper or sinister purpose on the part of members of the common council in the adoption of such ordinance." (*Schmidt v. City of Indianapolis,* 168 Ind. 631, 80 N. E. 632, 120 Am. St. 385, 14 L. R. A., N. S., 787.)

Prior to the adoption of the ordinance annexing the territory embraced in the approach, no part of the Johns land was within the city limits. The Johns farm consists of about sixty acres of land, lying partly east and partly west of the Ninth Street pike, mostly agricultural, pasture and bottom land, with a residence on one part occupied by Mrs. Johns and her family.

Mrs. Johns has been twice married. Her first husband, Porter, in 1866 acquired the present Johns holdings and adjoining lands, comprising a contiguous area of about 200 acres, part of which is shown on the maps introduced in evidence, the balance lying to the east and southeast of the millrace, as shown on these maps, was disposed of in 1868 and in 1888 in tracts of considerable size. A portion of the original holdings lay on top of the bluff or bench, where the depot is situated, and this portion platted in 1867 was subsequently disposed of, and some of these lots and blocks were included in the annexation ordinance. The county road crossed the original premises from west to east running near the foot of the bluff and some irregular pieces lying between the top of the bluff and the county road were disposed of at intervals. Beginning with 1868 there have been isolated sales of the original Johns holdings, the areas so sold varying from less than an acre to more than sixty acres. By 1890, save for the platted subdivision on the bench, the Johns holdings had been reduced to practically the present area. In 1908, Mary E. Ridenbaugh conveyed to Mrs. Johns a tract of 6.43 acres to adjust the mutual boundaries

of their lands. This transaction consisted of an exchange of properties between Mrs. Ridenbaugh and Mrs. Johns. This so-called Ridenbaugh tract, now belonging to Mrs. Johns, is crossed by the proposed r.ad just where it leaves the city limits.

Mrs. Johns and her husbands, prior to their decease, lived on and operated their farm, through tenants, for almost sixty years, and she and her two daughters now live thereon, small holdings next to the mother having been turned over to the daughters. That portion of it included in the proposed approach and which was annexed by the city consists of a diverging strip about 158 feet wide, running diagonally through a cultivated field.

Louisa E. Butler, through whose place the proposed boulevard will extend, did not appeal, the city now owning the tract sought to be condemned as against her. Charles F. Baxter, through whose land the approach extends, appealed on the judgment-roll alone on the constitutionality of certain statutes involved, which appeal is now pending before this court in another action.

Appellant complains because the ordinance of annexation was admitted by the court before the respondent had introduced evidence showing that the conditions authorizing the annexation of the land existed and in that connection complains that the motion for nonsuit made at the conclusion of plaintiff's testimony was not granted. Appellant Johns, after respondent had rested, introduced evidence and did not at the conclusion of the case renew the motion for nonsuit and therefore waived such motion. (*Blackfoot City Bank v. Clements*, 39 Ida. 194, 226 Pac. 1079.) If the entire evidence in the case justified the admission of the ordinance no error was committed. This point is covered by the later discussion herein.

If the entire area described in the annexation ordinance was properly brought into the city, the city unquestionably had the right to condemn the parcels sought for the purpose of making the proposed improvement. (Sec. 14, art. 1, Const.; C. S., secs. 3929, 3942, 3963, 3964, 7404–7423,

incl., and *Thomas v. Boise City*, 25 Ida. 522, 138 Pac. 1110.) Since there is no showing that the council abused their discretion in determining upon the necessity of the new boulevard or approach and the manner and method of its construction, their determination thereon is conclusive and will not be disturbed.

"The court is to judge, as a matter of law in the first place, as to whether the use for which the condemnation is sought is a public use within the contemplation of the constitution or the statute. After that question is determined by the court, the question of the extent of the enterprise and necessity for the taking should be in a large measure left to the judgment and discretion of the public agency seeking to make the condemnation." (*Washington Water Power Co. v. Waters*, 19 Ida. 595, 115 Pac. 682.)

"The state or its agents in charge of a public use must necessarily survey and locate the land to be taken, and are by statute expressly authorized to do so. Code Civil Proc., sec. 1242. (Ida. C. S., sec. 7408.) Exercising, as they do, a public function under express statutory authority, it would seem that in this particular their acts should, in the absence of evidence to the contrary, be presumed correct and lawful. The selection of a particular route is committed in the first instance to the person in charge of the use, and unless there is something to show an abuse of the discretion, the propriety of his selection ought not to be questioned, for certainly it must be presumed that the state or its agent has made the best choice for the public; and if this occasions peculiar and unnecessary damage to the owners of the property affected the proof of such damage should come from them. And we think that when an attempt is made to show that the location made is unnecessarily injurious the proof ought to be clear and convincing, for otherwise no location could ever be made. If the first selection made on behalf of the public could be set aside on slight or doubtful proof, a second selection would be set aside in the same manner, and so *ad infinitum*. The improvement could never be secured because, whatever location was proposed, it could be de-

feated by showing another just as good. We think there was no error in denying the motion for nonsuit." (*City of Pasadena v. Stimson,* 91 Cal. 234, 27 Pac. 604.) 20 C. J. 632–634; *Castro Point Ry. & Terminal Co. v. Anglo-Pacific D. Co.,* 33 Cal. App. 418, 165 Pac. 544; *City of Santa Ana v. Brunner,* 132 Cal. 234, 64 Pac. 287; *Kansas etc. Ry. v. Northwestern etc. Co.,* 160 Mo. 288, 84 Am. St. 717, 61 S. W. 684, 51 L. R. A. 936; *City of Seattle v. Byers,* 54 Wash. 518, 103 Pac. 791; McQuillin, Mun. Corp., sec. 1466.

There remain, then, but two questions, whether the trial court placed the proper construction upon C. S., sec. 3850, and, second, whether there is sufficient evidence to sustain the findings and conclusions of the trial court based on such interpretation.

By the terms of C. S., sec. 3850, before any land may be annexed to a city it must lie contiguous or adjacent thereto, and there are two additional conditions, one or both of which must also obtain. First, either the land sought to be annexed shall be or shall have been, by the owner or with his authority or acquiescence, laid off into lots or blocks containing not more than five acres each, or, second, the owner must have sold or begun to sell such contiguous or adjacent lands by metes and bounds in tracts not exceeding five acres. It thus appears that it is not necessary that if sales are made the land shall have been platted or subdivided, nor, on the other hand, if platted or subdivided, that any such land shall have been sold. It furthermore appears that the city is not restricted to annexing the portions sold, because if that were the case the use of the word "owner" in the section would be meaningless, and, on the other hand, if the operation of the statute were to be restricted to the lands platted but not sold, violence would be done to the latter portion of the statute. In other words, if the owner has platted land into lots or blocks containing not more than five acres each, and has sold the same, or has sold without platting, in tracts of not more than five acres, such lots or tracts together with the additional portions still remaining

in the possession of the former owner of such platted lots, or metes and bounds tracts, may be annexed.

Appellant calls attention to the fact that the statutes with reference to annexation existing prior to C. S., sec. 3850, have been so amended as to indicate that the legislature sought to prevent the possibility of annexing anything other than five-acre tracts or less. Section 8 of H. B. 43, 1899 Sess. Laws., p. 108, provided as follows:

"Whenever any land lying contiguous or adjacent to any such city or town, or to any addition or extension thereof, shall be, or shall have been, by the owner or proprietor thereof, or any person by or with his authority or acquiescence, laid off into lots or blocks of not more than one acre of land, whether the same shall have been, or shall be, laid off, subdivided or platted in accordance with any statute of this State or otherwise, or has sold, or begun to sell off such adjacent lands by metes and bounds in tracts not exceeding one acre, or whenever any tract or portion not exceeding ten acres of land may have been, or shall be, contiguous to, or surrounded or bounded by, on one or more sides by any addition or extension, or intended addition, to any such city, whether platted as aforesaid or not, it shall be competent for the board of trustees or council, by ordinance, to declare the same, by such name, designation or description as they may see fit, a part of such city or town; and thereupon and thereafter the corporate limits of such city shall extend to and include such land."

It thus appears that the conditions under which land might have been annexed as outlined in that section were as follows: Whenever any land was contiguous or adjacent and had been by the owner or with his authority laid off into lots or blocks containing not more than one acre of land, or if the owner had begun to sell off, by metes and bounds, tracts not exceeding one acre, or if there were any tracts not exceeding ten acres, whether platted or not, contiguous to, or surrounded by, on one or more sides, any addition, extension or intended addition of such city. This section was

either amended by implication or superseded in 1905, Sess. Laws of that year, p. 391, sec. 1, as follows:

"Whenever the land lying contiguous or adjacent to any city, town or village in the State of Idaho, or to any addition or extension thereof, shall be, or shall have been, by the owner or proprietor thereof, or any person by or with his authority or acquiescence, laid off into lots or blocks, containing not more than five acres of land each, whether the same shall have been, or shall be, laid off, subdivided or platted in accordance with any statute of this State or otherwise, or whenever the owner or proprietor or any person by or with his authority, has sold, or begun to sell off such contiguous or adjacent lands by metes and bounds in tracts not exceeding five acres, it shall competent for -the council or board of trustees, as the case may be, by ordinance, to declare the same, by proper legal description thereof as part of such city, town or village."

Thus the provision with regard to the annexation of tracts or portions not exceeding ten acres of land when contiguous to or surrounded by, on one or more sides, an addition or extension to the city was eliminated. There remained in it, however, the provision that whenever any land lying contiguous or adjacent to the city has been dealt with in either of the two ways mentioned above, by the owner, such land may be annexed. The word "owner" in this connection and "such lands" must refer not only to the portions sold or platted but also to the portions remaining in the possession of the "owner," otherwise the legislature would have left out the word "owner," and would have provided that land adjacent to a city laid off into lots and blocks containing less than five acres, or tracts of less than five acres, though unplatted, if adjacent and contiguous thereto might be annexed. Furthermore, if the lands referred to do not include those unsold or unplatted, the second condition would be of no effect, because the tracts in less than five acres described by metes and bounds before becoming annexable must be adjacent or contiguous to the city, and if they were the only ones that might be annexed no reference need have

been made to the owner of the property from which such five-acre tracts had been sold. It therefore does not appear that the elimination of the ten-acre provision has any bearing on the statute as it now remains in C. S., sec. 3850.

The amendment contained in the Sess. Laws of 1907, p. 309, was not of the section under consideration here. The present sec. 3850 is a copy of and taken from the Sess. Laws of 1905.

It only remains to be determined whether the land belonging to Mrs. Johns and annexed by the city had attached to it either one of the two alternative conditions required by the statute, it being conceded that her land, in the main, including the portion annexed, lies adjacent and contiguous to the city.

Appellant contends that the land secured by her from Mrs. Ridenbaugh in an exchange of properties some years ago cannot be taken for the reason that it has not been platted nor has any part thereof been sold in less than five-acre tracts. If this so-called Ridenbaugh portion of appellant's property is to be considered as a separate and distinct portion, lot or parcel from the balance of the Johns' holdings, the evidence discloses that Mrs. Johns has begun to sell off a portion of it in a tract not exceeding five acres, for use as a tourist park, the amount to be transferred depending upon the ultimately established confines of the proposed approach road or boulevard.

It appears from defendant's exhibit "B" that the total amount of acreage in the so-called Ridenbaugh tract is 6.43 acres. It also appears from the testimony that the portion to be sold, if the negotiations are consummated, will lie to the west of the approach as outlined, and upon correlation of plaintiff's exhibit "12" with the other exhibit it is apparent that if the approach is built as contemplated and this sale is consummated (and this unquestionably is the beginning of a sale) the portion of the Ridenbaugh tract to be thus sold for tourist park purposes is and will be less than five acres. If, on the other hand, the Ridenbaugh tract is considered as having been merged in the entire Johns' holdings, then

the character attaching to her total holdings attaches to this particular area, a part of which the city is seeking to annex.

The evidence also discloses that many years ago a portion of the Johns property was platted and that a portion of this platted subdivision known as the south Boise subdivision or addition is contained within the proposed annexation lines, namely, blocks 4, 11 and 12. Therefore, while no objection is raised to the incorporation of this platted portion within the annexed limits the statement that the annexed lines take in only such portion of the Johns original property as is necessary to the proposed approach is incorrect.

Counsel further urges that to say "that Mrs. Johns has sold off or begun to sell off tracts of land in parcels not exceeding five acres is manifestly not the same thing as to say that she has sold or begun to sell off her holdings in tracts not exceeding five acres in area." There may be a distinction without a real difference so far as affecting this controversy. The question to be determined, however, is, when, from such sales as were made, is it reasonable to conclude that the owner has begun to sell off her lands in less than five-acre tracts? Appellant's counsel eliminates from the twenty-three sales made by the Johns all except nine, these nine being, as they term it, significant transactions, five of which were of tracts less than five acres and four of tracts exceeding five acres. The question then is, where is the dividing line? It is manifestly unnecessary that the owner shall have sold all of her holdings or that she should have offered for sale her entire holdings in tracts of less than five acres. Counsel themselves admit that the majority of the significant sales are in tracts less than five acres. In view of this fact it cannot be said that it is an unreasonable conclusion that the owner has begun to sell off her land in less than five-acre tracts. The mere fact that a long period of time has elapsed between the different sales does not detract from this conclusion because the statute does not say that having begun, the sales must continue without interruption. The beginning to sell is the important step, and

while it might well be considered that some of the other sales are as significant as the nine referred to, nevertheless, giving every intendment in favor of appellant's position, we cannot say that the trial court erred in holding from the entire record that Mrs. Johns had begun to sell off her land in less than five-acre tracts. Having once begun, the necessary condition precedent was brought into existence. The sales of tracts of more than five acres with the exception of the one sold for tourist park purposes in the main antedated the sales of tracts in less than five acres.

Appellant in support of her proposition urges the unreasonableness of the following supposititious case, namely: that if a person had 160 acres of land adjacent to a municipality and had sold five-acre tracts from the portion immediately adjoining the municipality, or had so platted the portion thereof, the city council might take in the w'ole 160 acres. As pointed out above, the statute gives the municipality the right not only to take in the portions of the original holdings which have been sold but also the portion which has not been sold. If the portion has been platted or if a portion has been sold in less than five-acre tracts under the above contention the city council would be required either to take in the entire 160 acres or they might exercise their discretion as to what amount of the 160 acres should be taken in (*Fowler v. Ratterree*, 110 Ark. 8, 160 S. W. 893), and such exercise of discretion would have to be reasonable; thus the statute does not grant unlimited powers.

The trial court has found on sufficient evidence that Martha J. Johns has sold and begun to sell off her land in tracts of less than five acres. A municipality has no power other than that provided by legislative enactment to extend the boundaries of the city. C. S., sec. 3850, provides that under certain circumstances it shall be competent for the council to annex. It would be most unreasonable to hold that when the council has the power to annex land, that in the exercise of that power it must either annex the whole or no part thereof. Where a city has grown to the extent that it

has spread beyond its boundaries or there has come to be adjacent or contiguous to it a settlement, community or neighborhood to all intents and purposes a part and portion of the city, and in such adjacent community a property owner has in the exercise of his proprietory rights platted or begun to sell in small tracts, thereby recognizing that his land has thus become urbanized, he has thereby placed his land in such a position that the city may determine whether it wants to annex such territory because needed for its continued expansion. While, by his actions with respect to his property the owner may have given the municipality the authority to annex, it is possible that only a small portion in the judgment of the council ought to be a part of the city. Many reasons might be advanced from the standpoint of the city why certain property immediately contiguous should nevertheless not be a part of the city, and while the city under the statute under consideration may annex all of the adjacent and contiguous tracts, it is not unreasonable and illogical to hold that the city council may exercise their best judgment as to what should be annexed. Appellant has no cause to complain that the annexation does not include all of the Baxter and Butler tracts; her only interest is in her own land.

"In passing upon the question of whether an ordinance making an extension of the limits of a municipality be reasonable, the jury must consider the proposed extension as an entirety. The question is not whether each and every portion of the territory included in the proposed extension should or should not, if considered separately of and by itself, have been included, but whether the action of the authorities, in view of the conditions confronting the municipality at the time of the adoption of the ordinance of extension should be sustained. . . . . The power of extending corporate limits is granted not to be resorted to for the purpose alone of increasing the income of the municipality, but in order that the benefits incident to civic government may be extended to those resident in the territory adjacent to the municipality and included in the extension; and, fur-

ther, that the municipality by extending its police government, its sanitary and quarantine regulations, and its more adequate fire protection, may thereby conserve the best interests of the inhabitants within its original borders, and also give to those living in the territory included in the extension more efficient protection against devastation by fire, and by the enforcement of necessary sanitary regulations to the public health decrease the danger from disease and pestilence.'' (*Forbes v. Mayor etc. of City of Meridian*, 86 Miss. 243, 38 So. 676.)

''As has already been said, the principal objection to the method here adopted is the one relative to the fixing of the precise boundaries. The fixing of the boundaries of a municipality is ordinarily held to be the exercise of legislative power, but assuming it to be such in its nature, in view of the constitutional provision relative to the creation of municipal corporations, it does not follow that the Legislature may not confer the power to declare the precise boundaries upon the electors of the district to be affected. The conferring of such power is not a delegation of legislative power at all, for the Legislature is expressly prohibited from defining the boundaries. It fully exercised its own legislative power by the enactment of the general law in the matter. Necessarily, for the execution of such general law, the power to define the exact boundary lines of each particular municipality created or enlarged after the adoption of the Constitution must be, by such a law, placed somewhere. We find no provision in our Constitution limiting the right of the Legislature to place this power with any tribunal or person, except so far as such right may be limited by section 1, of article 3, wherein it is provided that the powers of the government of the state of California shall be divided into three separate departments, the legislative, executive, and judicial, 'and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or per-

mitted.' Manifestly this provision has no application."
*People v. Town of Ontario,* 148 Cal. 625, 84 Pac. 205.

"In *State ex rel. v. Lichte,* 226 Mo. 273, 126 S. W. 466,
our  Supreme Court held that if the intention of taking in
farm lands or unimproved lands is only for the apparent
purpose of including them to increase the taxable area, such
action cannot stand, but on the other hand, the body charged
with the duty and invested with the power to increase the
limits of a corporate town or city may include a reasonable
quantity of other land when it is so situated that it appears
to be adopted and designed for urban purposes and necessary
or convenient to the reasonable exercise of the village or
city government, and whether it is so or not is a question
in the first instance for the legislative body.

"As further illustrative of the law of our state on this
matter, see *State ex Inf. Major, Attorney General, v. Kansas
City,* 233 Mo. 162, 134 S. W. 1007, where our Supreme
Court, embodying the very exhaustive report of the special
commissioner in that case, refers to it as containing a full
collection of the authorities to that date. This latter case
was followed and approved by our Supreme Court in *Hislop
v. City of Joplin,* 250 Mo. 588, 157 S. W. 625." (*State v.
City of Maplewood* (Mo. App.), 193 S. W. 989.)

No decision has been brought to our attention construing
a statute similar to the one herein contained, nor has any
statute with similar terms been referred to. But under
somewhat similar statutes the courts have uniformly held
that in determining what property shall be annexed, the
other conditions precedent existing, the city council may
exercise their discretion and if not exercised unreasonably
their actions will be sustained.

"It is perhaps true, as is usually the result in these annex-
ation cases, that there are some portions of the area embraced
within the boundaries of the territory annexed that may not
be needed by the city 'in the reasonably near future for de-
velopment and expansion'; but a proposed extension of the
limits of the boundaries of the city has to be considered and
determined as a whole and unplatted or even marsh lands

between that which should be annexed to the city must of necessity be taken in, which fact does not render the ordinance making the extension unreasonable. (1 McQuillin, Mun. Corp., sec. 278; *Alexandria v. Alexandria County, supra,* and authorities there cited.)'' (*Warwick County v. City of Newport News,* 120 Va. 177, 90 S. E. 644.)

''Relator challenges, with much force, this extension, alleging that it is unreasonable and cannot stand. Necessarily the range of inquiry involved in the question of the 'reasonableness' of any act must be rather wide. Obviously this range is very broad when the question is the reasonableness of the extension of the limits of a great city, involving, as it must, the numerous considerations which can and do enter into the element of 'reasonableness' and the almost countless facts which bear upon the existence of those considerations. The problem for the court is to examine the circumstances bearing upon the extension, and, in the light of the investigation declare that the extension is or is not so unreasonable that it should or should not be allowed to stand. It is no province of the court to substitute its own judgment of what would be the best or most advisable line for the extended limits; it is not its province to subtract or add to the territory selected by the municipality to be annexed; its sole duty is to examine the extensions actually attempted and to say whether it should remain. In short, the court is passing, in a purely judicial manner, upon the validity of an act legislative in its nature. It would be casually evident that many different considerations might bear upon this question of reasonableness, and that the relative value—even presence —of each would vary with every case.'' (*State v. Kansas City,* 233 Mo. 162, 134 S. W. 1007.)

''The advantages of an early establishment of boulevards in growing territory are that it can be done at much less cost, and that it helps shape the growth of the city along systematical and economical lines, placing the residential, business, and factory portions of the city in the best and most economical relations to each other.'' (*State v. Kansas City, supra.*)

"The factors which have been regarded by courts in determining the 'reasonableness' of city boundary extension are many. Sometimes one factor alone is of importance; sometimes several combine their weight to determine the matter. Each case must rest upon its own facts. *Plattsburg v. Riley,* 42 Mo. App. 18, 22. Some of these factors which have received the consideration of courts, either standing alone or in connection with other elements, are as hereafter set out. This list is not intended to be complete, but rather as suggestive, in addition to the cases cited upon the points hereinafter discussed. Some of the following cases were under statutes and the cases from Kentucky, Iowa, and Nebraska are upon questions not of the validity of annexation of territory, but of the right to levy municipal taxes upon agricultural land inside a city limits. In those three states is held the unique doctrine, everywhere else denied, that land can remain within the corporate limits of a city and not be subject to municipal taxation, if its use is purely agricultural. The above cases are helpful, however, and are here cited.

"The leading case is *Vestal v. Little Rock,* 54 Ark. 321, 329, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778. (Adopted and approved in *Copeland v. St. Joseph,* 126 Mo. 417, 29 S. W. 281 and *Parker v. Zeisler,* 73 Mo. App. 537.) The rule there laid down is as follows: 'Before considering them directly, we will state what we conclude from the many authorities to be the correct rule to guide in determining an application for annexation; 1. That the city limits may reasonably and properly be extended so as to take in contiguous lands; (1) when they are platted and held for sale or use as town lots; (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner; (3) when they furnish the abode for a densely settled community, or represent the actual growth of the town beyond its legal boundary; (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas or water system, or to supply places

for the abode or business of its residents, or for the extension of needed police regulation; and (5) when they are valuable by reason of their adaptability for prospective town uses; but the mere fact that their value is enhanced by reason of their nearness to the corporation would not give ground for their annexation, if it did not appear that such value was enhanced on account of their adaptability to town use.' . . . . In 28 Cyc. 188, is the following statement of factors which may be of importance in determining the reasonableness of city annexation of territory; '(a) Annexed territory has advantages of city; (b) will make limits regular; (c) secures uniform grade and alignment of streets in added territory; (d) required by public convenience and health; (e) necessary for prosperity of city; (g) necessary for extension of gas, water, sewer, street, or police systems; (h) more adequate school facilities.' . . . . '' (State v. Kansas City, supra.)

"It would indeed be a short-sighted policy which would preclude the city from bringing within its limits, exercising control over, and giving direction to, the building of what must inevitably soon become a part of the municipality. And that is not the policy of the law, for, as heretofore shown, one of the recognized rules of other courts, is that such lands may be added 'when they are valuable by reason of their adaptability for town uses.' '' (State v. Kansas City, supra.)

"Portions of the territory annexed were uninhabited, and it is claimed that there could be no annexation of any such lands except by proceedings taken under the act of 1899, providing for the annexation of uninhabited territory. Stats. 1899, p. 37, c. 41. Uninhabited land is to be found in probably every settled community in the state, and we cannot conceive of any case of original incorporation or annexation to an existing municipality of inhabited territory that would not almost necessarily include some parcels of land not actually inhabited.'' (People v. Town of Ontario, supra.)

"The legislature has committed the expansion of the boundaries of existing villages wholly to the judgment of the

village council and the legal voters of the territory to be added. That judgment, when exercised in conformity to law, should not be set aside by the courts, unless the evidence clearly demonstrates that the land annexed is not suburban in character, and not likely to become such in the near future, or that no community of interest exists or is likely to exist between the village inhabitants and those who occupy or are about to occupy the annexed territory as a place of residence or work." (*State v. Village of Kinney,* 146 Minn. 311, 178 N. W. 815.)   *State v. Birch,* 186 Mo. 205, 85 S. W. 361; *New Orleans & N. W. R. Co. v. Town of Vidalia,* 117 La. 561, 42 So. 139; *Town of Crystal Springs v. Moreton,* 131 Miss. 77, 95 So. 242; *Bowman-Hicks Lumber Co. v. Town of Oakdale,* 144 La. 849, 81 So. 367.   Furthermore the total portion annexed is to be considered as an entirety, and even though some parts might have been left out or other areas might have been included, nevertheless, if the entire portion sought to be annexed comes reasonably within the purposes for which annexation may be made, it will not be considered that the city has abused its discretion.   There can be no question that it is not only highly desirable but reasonably necessary to the proper development and growth of the city and the proper police protection of property, its inhabitants and visitors, that the Oregon Short Line Depot be included within the city limits.   (*Collins v. Town of Crittenden,* 24 Ky. L. 899, 70 S. W. 183.)   The portion sought to be annexed includes not only the part needed to complete the approach but also the lands lying around the depot as indicated in the platted portion of the original Johns holdings.

"Land on which depots are located may be taken in. *Collins v. Crittenden,* 24 Ky. Law Rep. 899, 70 S. W. 183. And land necessary for the protection of the health of the city may be included, and extension of the city must be considered as a whole, and land necessary to foster and encourage the growth and prosperity of the city may be included. *Forbes v. Meridian,* 86 Miss. 243, 38 So. 676; *Caterlin v. Frankfort,* 87 Ind. 45; *Yancy v. Fairview,* 23 Ky. Law Rep. 2087, 66 S. W. 636; *Fredonia v. Rice,* 115 Ky. 443, 73 S. W. 1125; *Wahoo v. Tharp,* 45 Neb. 563, 63

N. W. 840; *Vestal v. Little Rock,* 54 Ark. 321, 329, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778.

"In the last-cited case the railroad depot near the municipality was located in the territory sought to be annexed, and the court held that it was proper to annex the depot for the reason that the inhabitants were dependent on it for shipping their freight, passenger travel and mail; that there was no sidewalk from the boundary of the municipality to the depot; that one was necessary; and that failure to annex would retard prosperity etc. That case is only distinguishable from this by the lone fact that the street and other approaches to the Union Station at Alexandria are well paved; the cost of same without the city, having been defrayed by private subscription and the county authorities. This fact is not sufficient, as it appears to us, to control in the consideration of the cogent reasons alleged and proved why this Union Station should be within the corporate limits, control, and police regulation of the city of Alexandria. See also, *Bridge Co. v. Pt. Pleasant,* 32 W. Va. 328, 9 S. W. 231." (*City Council of Alexandria v. Alexandria County,* 117 Va. 230, 84 S. E. 630; *Town of Fredonia v. Rice,* 115 Ky. 443, 73 S. W. 1125.)

Appellant urges that the land to be used for the approach is not sought for any other purpose, it being contended that it will not add to the value of property nor will it produce taxes.

Upon examination it is found that in other cases urban property owners urged that the sole purpose of the municipality was to acquire additional taxable property. The courts held that was not a valid objection, because that was not the only purpose for which the municipality was organized, and so herein we say that the purpose of adding taxable property is not the only purpose or reason which would authorize an annexation. One should not be so blinded by the depot on the bench as not to see the approach, nevertheless one should look up from the approach long enough to at least see the depot.

Appellant admits that five parcels or tracts comprising less than five acres have been sold. Appellant urges, however, that this does not indicate an intention on the part of Mrs. Johns to sell the balance in less than five-acre tracts or that she had the intention to sell in parcels or lots of less than five-acre tracts. The fallacy of this argument is that the statute does not say anything about intention, merely that the owner has sold or begun to sell tracts by metes and bounds in not less than five-acre tracts, which condition is conclusively met in this case.

Since one of the conditions precedent required by the statute exists and since the purposes for which the annexation is sought are reasonable, the evidence is ample and sufficient to sustain the findings and conclusions of the trial court, the judgment is therefore affirmed, and it is so ordered. Costs awarded to respondent.

Appellant company's land was within the city and therefore subject to condemnation, and since we have determined that the annexation of the Johns tract was valid, appellants' objection to the condemnation of its lands because the Johns tract was not legally annexed falls and the judgment of the trial court in the Boise Development Company case is therefore affirmed, and it is so ordered. Costs awarded to respondent.

Wm. E. Lee, J., and Varian, D. J., concur.